328 So.2d 126 (1976)
STATE of Louisiana
v.
Bobby Ray SNEED et al.
No. 56585.
Supreme Court of Louisiana.
January 19, 1976.
Rehearing Denied February 20, 1976.
*131 Bobby L. Culpepper, Holloway, Baker, Culpepper & Brunson, Jonesboro, Nesib Nader, Shreveport, for defendants-appellants.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Leon H. Whitten, Dist. Atty., Robert Y. Butler, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
On June 28, 1974 the Grand Jury of Bienville Parish charged Bobby Ray Sneed, Eugene Wright and Arthur Gardner with the first degree murder of Curtis E. Jones on June 13, 1974. A change of venue was granted to Claiborne Parish where the accused were tried and found guilty of second degree murder. They were each sentenced on April 24, 1975 to life imprisonment at hard labor, not eligible for parole, probation or suspension of sentence for a period of twenty years. On this appeal, seventy-three errors are assigned by the defense.
Early on the morning of June 13, 1974 the elderly couple, Curtis E. Jones and his wife Maude, were brutally beaten by a number of assailants as they slept side by side in their home at Gibsland in Bienville Parish. The assailants forced Maude Jones to disclose the location of her purse from which they obtained $700. Jones and his wife were then bound with wire and the assailants made good their escape. When Maude Jones was able to loosen the wire which bound her, she summoned help. Clyde Stinnet, a neighbor, responded to her call. When help arrived about 7:30 that morning Curtis Jones was dead. Maude Jones was seriously injured by the assault and required lengthy hospitalization.

Assignment No. 1
While she was testifying to the facts and circumstances surrounding the beating of her husband and herself, Maude Jones said she could hear her husband begging his attacker to stop, saying over and over "Oh, don't."
When defense counsel objected that the testimony was hearsay, the objection was overruled, the State's attorney explaining that the testimony was offered to prove that the statement was made, not for the truth of its content.
*132 Whether offered for the purpose stated or otherwise, the statement of the decedent while he was being brutally beaten to death was clearly admissible as part of the res gestae, La.R.S. 15:447-48, a well-recognized exception to otherwise objectionable hearsay testimony.

Assignment No. 2
Defense counsel makes a general assignment that error occurred when the State's attorney propounded leading questions to Maude Jones as she testified for the State. In brief the State alleges that "the objection was actually that same was not material nor relevant," while defendants argue the leading nature of the State's inquiry. Reference is then made in the State's brief to Maude Jones' testimony in which she described the injuries to her face sustained during the beating on June 13. When the State's attorney asked her, "What about your hands were they . . .." defense counsel objected that the question was leading, and was neither material nor relevant to the beating death of her husband. When the objection was overruled, the witness answered, "I don't believe I had any injury in my hand. It was in my face."
The answer to the question objected to was favorable to defendants. Whether the objection is based on the materiality or relevancy of the testimony or the leading nature of the question, there is no merit to this assignment. In connection with the objection that the question was leading, we note the trial judge's observation in ruling on a similar objection shortly thereafter: "The witness is aged and somewhat infirm and I will give him (the State's attorney) a little bit more leeway. . .." He then admonished the State's attorney to moderate the leading nature of his questions.

Assignment Nos. 3 and 4
While the State's attorney was questioning Maude Jones, she was asked: ". . . some months before June the 13th, Mrs. Jones, what sums of money, the amounts of money that you kept in your home, would you tell the Judge?" When defense counsel objected that the question was leading or because it sought "very specific sums of money that she has had in the house," the objection was sustained. Nevertheless, the State's attorney pursued the line of questioning and elicited from the witness, without further objection, the fact that several hundred dollars were kept in the house prior to June 13th.
The State's attorney answers the defense argument that this testimony was irrelevant by saying that its purpose was to establish a possible motive for the armed robbery of the Joneses, an element of felony murder, the charge of first degree murder under Article 30(1) of the Criminal Code, the crime with which these defendants were charged. La.R.S. 15:441.

Assignment No. 5
Objection was made by the defense that the answer would be irrelevant when the State's attorney asked "How do you know Mr. Sneed please, Ma'am, Mrs.Jones?" As the answer disclosed, Sneed had frequented the Jones house as a small boy doing chores. He would therefore be familiar with the premises, and Maude Jones was familiar with his voice which she recognized while the beating was in progress. For both reasons the evidence was relevant and material.
There is no merit to this assignment.

Assignment Nos. 4,15,18, 24, 26, 27, 28, 33, 34, 35, 38, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60
These thirty assignments of error relate principally to testimony, photographs or physical evidence admitted over defense objection that the evidence was not within the scope of the opening statement. Other objections urged in these bills are that the evidence was immaterial, irrelevant and introduced without proper foundation.
*133 Article 766 of the Code of Criminal Procedure requires that "The opening statement of the state shall explain the nature of the charge, and set forth, in general terms, the nature of the evidence by which the state expects to prove the charge."
"Evidence not fairly within the scope of the opening statement of the state shall not be admitted in evidence.
"If the state offers evidence that was inadvertently and in good faith omitted from the opening statement, the court, in its discretion may admit the evidence if it finds that the defendant is not taken by surprise or prejudiced in the preparation of his defense." La.Code Crim.Proc. art. 769.
It is not necessary for the State to explain the evidence in minute detail in its opening statement. Evidence which by implication can be considered within the scope of the opening statement is admissible. State v. Eubanks, 240 La. 552, 124 So.2d 543 (1960); State v. Jones, 230 La. 356, 88 So.2d 655 (1956); State v. McLean, 211 La. 413, 30 So.2d 187 (1947). What may fairly be considered within the scope of the opening statement is admissible. State v. Stahl, 236 La. 362, 107 So.2d 670 (1959). In large measure the entire matter should be considered on a basis of the sound discretion of the trial judge as to prejudicial effect. State v. Clark, 231 La. 807, 93 So.2d 13 (1957). This Court in State v. Sneed, 316 So.2d 372 (La.1975), a case arising out of this same transaction, approved the use of a very general opening statement, citing substantial authority therefor.
The evidence introduced would fall within "general terms" setting forth "the nature of the "evidence" by which the State expected to prove the charge. And the State furnished notice that inculpatory statements would be used in evidence. Moreover, the opening statement of the State is not part of the record before us. No written motion was made by defense counsel to include the State's opening statement in the record as part of these assignments of error. La.Code Crim.Proc. arts. 841-45, 920.
In any event a reading of this record convincingly demonstrates that defendants were not taken by surprise, and that the trial judge did not abuse his discretion by admitting the evidence.

Assignment No. 6
Clyde Stinnet, a neighbor, responded to Maude Jones' call for help. He testified that when he arrived she said, "Clyde, they broke in on us, and I think they've killed Curt." The objection was that the statement was hearsay and Maude Jones was the proper person to testify to what she said.
The statement is admissible as part of the res gestae. Maude Jones had just released herself from the wires which bound her legs and had struggled to the back steps of her house and called to Clyde Stinnet for help. Her statement when he arrived was spontaneous and uttered under the stress of the circumstances surrounding the killing of her husband. Repetition of what she said by the witness Stinnet was corroborative of her testimony that her husband had been beaten and that she cried out for help. La.R.S 15:447-48; State v. Morgan, 296 So.2d 286 (La.1974). This assignment is without merit.

Assignment No. 7
Jessie W. Collingsworth testified that he drove the vehicle which transported a body from Gibsland to the Bossier General Hospital. Defense counsel objected that there was no foundation to establish whose body was transported. Thereafter, Collingsworth testified that the body was the remains of Jones. The basis for the objection was removed by the witness' later testimony. In addition Lamar Watson, the preceding State witness, testified that he was a funeral director and he had picked up Jones' body *134 for further transfer. Collingsworth's testimony was to establish the next link in the chain of evidence showing that Jones' body was transported to the hospital for an autopsy.

Assignment No. 8
Dr. H. H. Middleton, a general practitioner and Bienville Parish Coroner, was called to the scene of the slaying on the morning of June 13. He testified to the physical condition in which he found the deceased and Maude Jones as a result of the beating they sustained.
This testimony forms the basis of a defense objection that Maude Jones' physical condition was immaterial and irrelevant. We cannot agree. This prosecution was based upon the felony murder doctrine embodied in Article 30 of the Criminal Code. Under this theory the assault upon Maude Jones which occurred while her husband was being beaten to death was relevant and material to establish that the killing occurred while a felony was being committed. La.R.S. 14:30[1]; La.R.S. 15:464-67.

Assignment No. 9
Dr. Middleton's qualifications as an expert were stipulated. He was, then, qualified to give an opinion as to the cause of Curtis Jones' death from his observation of the decedent's physical condition. The objection to his giving his opinion of the cause of death, is therefore, unfounded. La.R.S. 15:464-67.

Assignment No. 10
This assignment is the subject of another objection to a leading question. Joe Story is the Chief of Police of Arcadia. In this capacity he, Bobby Butler and Larry Sutton arrested the accused Bobby Sneed on June 14, the day after the death of Curtis Jones. Story removed Sneed's personal belongings, and when he was asked, "What did you do with the personal belongings?", the question was objected to and sustained because no foundation was laid. The State's attorney then asked, "As an incident [of the] arrest did you examine Mr. Sneed?" Again objection was made that the question was leading. The objection was overruled.
The ruling of the trial judge is correct. If this question is leading it is difficult to see how any trial could be conducted and the facts of the case elicited.
Questions so framed as to suggest to the witness the answer desired are leading questions. There is no standard test to determine what is a leading question. However, the most commonly used test is whether the question may be answered yes or no. Other tests are whether the question is in the form of an assertion, or assumes facts not yet proved, or is asked in a tone or with an inflection that is suggestive of the answer desired. Because it is impossible to lay down any standard test and because so much depends upon the tone and inflection of the examiner, the apparent intelligence or lack of intelligence of the witness, the importance or comparative unimportance of the testimony sought to be elicited, the friendly or hostile attitude of the witness toward the examiner, and so on, it has become a thoroughly established rule that the matter is one for the discretion of the trial judge, and his ruling will not be disturbed on appeal unless the question was of vital importance to the case and there was a clear abuse of discretion. J. Tracy, Handbook of the Law of Evidence 167 (Prentice-Hall, 1952); La.R.S. 15:277.

Assignment No. 11
Sheriff Arvis E. Whitman was called as a witness for the State. He testified that he received a call at the Sheriff's office and went to the home of Curtis Jones at 7:30 on the morning of June 13. He testified he went into the house and found Jones' body in bed. When asked, "Would *135 you describe that bedroom please, sir?", defense counsel objected that a description of the bedroom was immaterial and irrelevant. The objection was properly overruled.
"Relevant evidence is that tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent." La.R.S. 15:441. It must be determined by the purpose for which it is offered. La.R.S. 15:442.
Relevancy, as the word itself indicates, is not an inherent characteristic of any item of evidence but exists as a relation between an item of evidence and a proposition sought to be proved. If an item of evidence tends to prove or to disprove any proposition, it is relevant to that proposition. Relevancy in a particular case depends upon whether the evidence tends to prove or disprove a proposition which is properly provable or disproved in the case.
The sheriff's answer to the question disclosed that in the bedroom blood was splattered on the bed, on the floor, on a chair, on the telephone, and on the walls; in the bathroom blood "literally covered" the tub, the commode and the drawers; the phone was torn from the wall; Jones' hands were tied with electrical cord and pillow slips used in choking him were around his neck. All this attested to the violent, deliberate and brutal killing, and was, thus, evidence material and relevant to a charge of first degree murder. La.R.S. 14:30(1).

Assignment Nos. 12, 13, 14 and 20
Joe Story had testified that he arrested Bobby Sneed, searched him and removed some personal objects. While Sheriff Whitman was testifying he was asked, "Did you receive anything from Mr. Joe Story on the afternoon of June the 14th?" This was objected to as a leading question, and the judge allowed the question, but subsequently, before it could be answered, sustained the objection. The State's attorney then rephrased the question to ask the Sheriff if he had seen Story on June 14th and what was Story's purpose in coming into the Sheriff's office. The Sheriff replied that Story surrendered Bobby Sneed and his personal belongings. The Sheriff then testified over objection to the items of personal property belonging to Sneed which Story turned over to hima billfold containing five twenty-dollar bills, sunglasses and small change.
In our opinion the trial judge properly regulated the examination of this witness. The first defense objection became moot when it was ultimately sustained by the trial judge, and subsequent objections were ill-founded.

Assignment No. 16
Joe Story was recalled as a witness by the State to testify that he had been told prior to arresting Bobby Sneed that a warrant had been issued for Sneed's arrest. Defense counsel objected to the recall because after his initial testimony Story had been released from the order of sequestration of witnesses to which he had been subjected.
There is no showing that Story talked to other witnesses, or that he was present in the courtroom or had otherwise violated the order of sequestration. In the absence of such a showing, the trial judge is presumed to know if his order has been violated. Therefore, the trial judge did not abuse his discretion when he permitted Story to be recalled. He is authorized by Article 764 of the Code of Criminal Procedure to modify his order in the interest of justice.

Assignment No. 17
When Joe Story testified after being recalled that he had been advised by *136 law enforcement agencies or officers that a warrant was outstanding for the arrest of Bobby Sneed, the defense objected that he was testifying to hearsay evidence. The subject matter of Story's testimony was not offered for the truth of the assertion, but only for the purpose of establishing that Story acted upon the information that a warrant for Sneed's arrest was outstanding. State v. Vassel, 285 So.2d 221 (La.1973).

Assignment Nos. 18 and 19
Alfred Critton was one of the participants in the crime. He turned state's evidence and testified to statements made by other participants as they returned to his car immediately after they left the Jones house. The defense contends that no notice of intent to use inculpatory statements had been furnished by the State as required by Article 768 of the Code of Criminal Procedure and therefore these inculpatory statements of the participants were inadmissible.
The State did advise defendants that they would use various oral statements made by the accused, and the State furnished defense counsel with all statements made by all codefendants, including a transcript of the statement made by the witness Critton, all as required by Article 768 of the Code of Criminal Procedure.
Moreover, under these circumstances, Critton's recounting of the statements made by the accused which were closely connected in time and place to the offense, was merely narration of declarations which were part of the res gestae. The conspirators were leaving the scene of the crime and were in furtherance of their common enterprise. La.R.S. 15:447-48; State v. Hodgeson, 305 So.2d 421 (La.1975); State v. Fink, 255 La. 385, 231 So.2d 360 (1970).

Assignment Nos. 21, 22, 23
A defense objection that Critton should not have been permitted to testify to what the participants told him when they returned to the car unless he named the person who made the statement is not well taken. Critton did not say what the statement was until he named the declarant-Arthur Gardner.
And a reading of Critton's testimony establishes that ample foundation was laid to form the basis for testifying to Gardner's statement.

Assignment Nos. 25, 29
Critton testified that Bobby Sneed contacted Andrew Rhodes and that Rhodes was a participant in the crime. The defense objection to evidence involving Rhodes in the initial stages of the conspiracy was, therefore, not well-founded. Although Rhodes was not a defendant in this trial, he was a participant according to Critton's testimony. His involvement is therefore material.

Assignments 30, 31, 32, 33, 34 and 35
Although some of these assignments urge that the photographs referred to were not mentioned in the State's opening statement and were, therefore, inadmissible, and this contention has previously been disposed of in our consideration of that issue, the principal issue discussed here involves the defense claim that photographs were introduced without a proper foundation. The assignments are without merit. The photographer who took the pictures testified before the photographs were introduced that they fairly and accurately depicted the scenes they represented. A foundation for the introduction was well-established.

Assignment No. 36
Objection was made during the testimony on redirect examination of the State's witness Deputy McCarthy. McCarthy took photographs of physical evidence and identified the photographs and their subject *137 matter on direct examination. At the time of the redirect examination, the objection referred generally to the fact that interrogation involved matters not mentioned on direct or on cross-examination. However, the objection did not point out wherein the redirect exceeded the subject matter of direct or cross-examination. The defense brief is equally as vague on the question. For this reason the objection fails to comply with the directions contained in Article 841 of the Code of Criminal Procedure that the party "at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor."
Notwithstanding the arguable contention that the redirect examination was beyond the direct and cross-examination, the application of the rule which confines redirect examination of a witness to the subject matter of the cross-examination and to the explanation of statements elicited on cross-examination is within the discretion of the trial judge. La.R.S. 15:281. Since defense counsel was not denied the opportunity to recross on the new matter alleged to have been brought out on redirect, there was no abuse of the discretion vested in the trial judge. State v. Watson, 301 So.2d 653 (La.1974); State v. Daniels, 262 La. 475, 263 So.2d 859 (1972), Cert denied, 410 U.S. 944, 93 S.Ct. 1378, 35 L.Ed.2d 610.

Assignment No. 37
Defense counsel objected to the introduction of a photograph of a key, arguing that the key was the best evidence and should be introduced instead. Shortly after the photograph of the key was admitted, the key was introduced in evidence.
The rule sought to be invoked here by the defense requires that the best evidence which from the nature of the case must be supposed to exist, and which is within a party's control, must be produced. La.R.S. 15:436. This does not mean, however, that a photograph of that evidence may not be introduced to show, as in this case, the site from which the evidence was obtained and to otherwise establish its connection with the facts of the case at issue. Since the "best evidence" was in fact introduced into evidence, there was no error.

Assignments Nos. 39-41
In these assignments of error defense counsel does not argue that the photographs introduced into evidence were inherently prejudicial; he does not argue that a proper foundation was not established; he argues that the photographs prejudiced the defendants merely because there were too many of them.
No authority is cited to support the defense contention, nor has an effort been made to explain what prejudice defendant has suffered by the admission of the allegedly cumulative photographic evidence.
Although Section 275 of Title 15 of the Revised Statutes illustrates the inherent authority of the trial judge to regulate the unnecessary and irrelevant introduction of evidence at the trial, the article does not specifically refer to the facts presented by this assignment of error. It is evident, however, from this and judicial authority generally, that a sound discretion is vested in the trial judge in such matters. There has been no showing of abuse of that discretion here.

Assignments 50-60
These assignments, already considered on the basis of the contention that the evidence involved was not within the scope of the State's opening statement, are now taken up on the contention that certain physical evidence was immaterial and irrelevant and introduced without foundation or chain of custody having been established. The evidence involved consisted of negroid *138 hair, gloves, pants, a wash cloth and towel, and a handbag stained with blood, all found near the scene of the killing, and bloodstained money taken from one of the defendants.
The objections were entirely groundless, for all of this evidence was relevant and material, and a proper foundation for its introduction was established. In brief, defense counsel argues that the mass of evidence was prejudicial. Because the evidence was relevant and material it is no ground for objection that it was voluminous.
These assignments are without merit.

Assignment No. 61
Here the defense contends that it was error to permit the jury to view the physical evidence referred to in Assignments 50-60. If the evidence was admissible, as it was, it was not error to permit the jury to view it. This assignment has no merit.

Assignment No. 62
Defense counsel objected to the recall of the state witness Critton. As we understand it, the objection is based upon the fact that the recall would involve testimony which was cumulative of facts to which the witness had already testified.
Since permitting the recall of a witness is a matter which addresses itself to some extent to the discretion of the trial judge, there is no showing of abuse here. Nor is there a showing that the defense was denied an opportunity to recross.

Assignment No. 63
A defense motion for a directed verdict was denied by the trial judge and this ruling is said to be erroneous. A motion for a directed verdict can only be granted when there is no evidence at all of the offense or some essential element thereof. Here there is much evidence of every element of the crime charged, and the trial judge properly denied the motion for a directed verdict.

Assignment No. 64
In this assignment the defense argues that the trial court refused to order the prosecutor to set forth in answer to a motion for a bill of particulars the physical evidence that it intended to introduce. Under these circumstances, it is argued, the defense was denied the right to inspect that evidence and have it examined by experts contrary to the holding in Barnard v. Henderson, 514 F.2d 744 (5th Cir. 1975).
No showing has been made that any of the evidence referred to required inspection and examination by experts. The effect of defendant's argument is to urge this court to approve a general extension of pretrial discovery, an extension this Court has been reluctant to make, except in a few well-delineated circumstances. State v. Major, 318 So.2d 19 (La.1975).
There was no error in the ruling of the trial judge.

Assignment No. 65
Defense counsel contends that it was error for the trial judge to find in the preliminary hearing that there was probable cause for charging defendants with the offense of first degree murder considering that the only evidence introduced at that hearing by the State was a copy of the grand jury indictment against defendants.
After a grand jury has indicted an accused, the preliminary examination at the time it was held was limited to the perpetuation of testimony and the fixing of bail. La.Code Crim.Proc. art. 296. Cf. La.Const. art. I, § 14 (1974). Neither the State nor the defense availed itself of the opportunity to perpetuate testimony, or *139 produced evidence on the issue of bail. Moreover, after conviction and sentence, errors alleged to have occurred at a preliminary hearing are moot. State v. Monk, 315 So.2d 727 (1975); State v. Richardson, 258 La. 62, 245 So.2d 357 (1971).

Assignment No. 66
A defense motion to quash the indictment because no women served on the grand jury was properly denied by the trial judge.
This indictment was returned on June 28, 1974, at a time when this Court had repeatedly held that the absence of women on grand or petit juries did not invest those juries with constitutional infirmity. State v. Comeaux, 252 La. 481, 211 So.2d 620 (1968). Thereafter, in 1975, the United States Supreme Court held in Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), that exclusion of women from petit juries was unconstitutional and convictions by juries so constituted were invalid. However, the Taylor decision was held not to be retroactive, and convictions obtained prior to that decision were not invalid because women did not serve on the jury. Daniel v. Louisiana, 420 U.S. 31, 95 S.Ct. 704, 42 L.Ed.2d 790 (1975).
There was no error in the ruling of the trial judge.

Assignment Nos. 67 and 71
In these assignments it is contended that the trail judge committed error when he failed to quash the indictment on the defense motion that Act 109 of 1973, Article 30 of the Criminal Code, was passed at a fiscal session of the legislature and for that reason is invalid. Further, Act 111 of 1973, Article 30.1 of the Criminal Code, under with defendants were convicted is alleged to be invalid for the same reason.
We considered these questions in State v. Reado, 295 So.2d 440 (La.1974), and decided that the acts were enacted in accordance with law and were valid and enforceable.

Assignment No. 68
From the State's brief we understand that this assignment of error is based upon the defense contention that the indictment charging first degree murder should have been quashed, for the statute upon which it is based, La.R.S. 14:30, is unconstitutional in that it prescribes the death penalty held to be unconstitutional in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).
The constitutionality of the death penalty prescribed in Section 30 of Title 14 of the Revised Statutes has been upheld in State v. Hill, 297 So.2d 660 (La.1974),cert, denied, 419 U.S. 1090, 95 S.Ct. 682, 42 L.Ed.2d 683 (1975), a decision made in the light of the holding of Furman v. Georgia.We adhere to that decision.

Assignment No. 69
A motion for a new trial was filed by defendants in which the errors asserted in the assignments of error are repeated. Since we have considered these contentions and found them to be without merit, the motion for a new trial is not well-founded. La.Code Crim.Proc. art. 851.

Assignment No. 70
The denial of a motion in arrest of judgment is asserted to be error. Aside from the brief reference to the motion itself, no argument is made setting forth the basis for the contention that the ruling was erroneous.
The motion repeats the allegation contained in the motion for a new trial. For the reasons assigned in our disposition of the numerous assignments of error, there is no merit to the motion in arrest of judgment.

*140 Assignment No. 72

This assignment relates to the amendment of the indictment prior to arraignment to indicate "Arthur Gardner" to be the true name of the alias "John Doe", and to show "Eugene Wright" to be the true name of the alias "Richard Roe".
The problem is governed by Article 466 of the Code of Criminal Procedure, which provides:
"In an indictment it is sufficient for the purpose of identifying the defendant to state his true name, or to state the name, appellation, or nickname by which he is known, or if no better way of identifying him is practicable, to state a fictitious name, or to describe him as a person whose name is unknown, or in any other manner. In stating the true name or the name by which the defendant is known or a fictitious name, it is sufficient to state a surname, a surname and one or more given names, or a surname and one or more abbreviations or initials of a given name or names.
"If the true name of a defendant identified in the indictment otherwise than by his true name is disclosed by the evidence or is otherwise discovered, the court shall cause the indictment to be amended to show his true name, and the proceedings shall continue against the defendant in his true name.
"in no case is it necessary to aver or prove that the true name of the defendant is unknown to the grand jury, complainant, or prosecuting officer."
This article authorizes the action taken, and there is no merit to this assignment.

Assignment No.73
Failure of the court to grant a motion to provide the defense with a copy of the grand jury proceedings is asserted in brief as a grounds for this assignment of error. The defense was not entitled to a copy of these proceedings. La.Code Crim.Proc. art. 434. No authority has been cited to support the defense contention.
For the reasons assigned, the conviction and sentence are affirmed.
DIXON, J., concurs.
CALOGERO, J., concurs and assigns reasons.
CALOGERO, Justice (concurring).
I consider the majority's reference to conspiracy in the treatment of Assignment Numbers 18, 19 and in the treatment of Assignment Numbers 25, 29, unnecessary to the disposition of the Bills and legally inappropriate.
I therefore concur.