445 So.2d 736 (1984)
Pascal F. CALOGERO, Jr.
v.
STATE of Louisiana ex rel., David C. TREEN, Governor, William J. Guste, Jr., Attorney General, James E. Brown, Secretary of State, and Jerry M. Fowler, Commissioner of Elections and
Darleen M. Jacobs, Intervenor.
No. 83-CQ-2436.
Supreme Court of Louisiana.
February 6, 1984.
*737 R. King Milling, M. Truman Woodward, Jr., Milling, Benson, Woodward, Hillyer, Pierson & Miller, New Orleans, Sam D'Amico, Baton Rouge, Charles A. Kronlage, Jr., New Orleans, for plaintiff-appellee.
William J. Guste, Jr., Atty. Gen., Roy A. Mongrue, Charles L. Patin, Jr., Asst. Attys. Gen., David G. Sanders, Staff Atty., Baton Rouge, for defendants-appellants.
JAMES E. BOLIN, Justice ad hoc.[*]
Justice Pascal F. Calogero, Jr. instituted this suit for a declaratory judgment, holding that, when he was elected in November, 1974, it was for a fourteen year term as provided under the Louisiana Constitution of 1921. This declaration was sought because there was a question of whether the 1921 Constitution in effect on the date of the election determined the length of his term of office, or whether the 1974 Constitution in effect on the day he assumed the office was controlling. The trial court ruled that the law in effect on the date of his election was determinative of the length of his term of office. An appeal was taken to the First Circuit Court of Appeal which, in turn, certified the question to this court. We affirm the decision of the trial court.
On November 5, 1974 Justice Calogero was reelected to the office of Associate Justice of the Louisiana Supreme Court for the First Supreme Court District. On that date, the Louisiana Constitution of 1921 was in effect and art. 7, § 6 provided:
". . .
The justices of the Supreme Court shall be learned in the law, citizens of the United States and of this State, not less than thirty-five years of age, and each shall have practiced law in the State for at least ten years preceding his election, and shall have resided within the territory of the district from which elected, for the two years immediately preceding. They shall be elected for terms of fourteen years ..." (Emphasis added)
The governor issued plaintiff's commission on December 31, 1974, and he took his oath of office on December 31, 1974 and, again, on January 1, 1975.
At twelve o'clock midnight, December 31, 1974, the 1974 Constitution, which had been adopted by a vote of the electorate in April, 1974, became effective. Article 5, § 3 of the 1974 Constitution provides:
"The supreme court shall be composed of a chief justice and six associate justices, four of whom must concur to render judgment. The term of a supreme court judge shall be ten years." (Emphasis added).
Article 5, § 21 provides:
"The term of office, retirement benefits, and compensation of a judge shall not be decreased during the term for which he is elected." (Emphasis added).
Article 14, § 26 provides:
"Except as otherwise specifically provided in this constitution, this constitution shall not be retroactive and shall not create any right or liability which did not exist under the Constitution of 1921 based upon actions or matters occurring prior to the effective date of this constitution."
*738 Due to the coincidence[1] of the effective date of the new constitution with its provision for a shorter term of office and the commencement of Justice Calogero's new term of office, and the possible confusion concerning the date the new term will expire, he instituted this suit against various state officials for a declaratory judgment. Darleen M. Jacobs, a prospective candidate for the position of Associate Justice which is now held by Judge Calogero, intervened seeking to have the term of office declared to be ten years. Several state officials jointly filed exceptions of no cause or right of action, which were overruled. The case went to trial upon an agreed statement of facts, resulting in a judgment in favor of plaintiff, decreeing that he had been elected under the 1921 Constitution, and, therefore, was elected to a fourteen year term. Defendants and intervenor appealed.
Before this court, defendants take the position they have no contested interest in the merits of this case, and merely submit it for a just decision. Intervenor, however, contends that the wording of art. 5, § 21 of the Constitution of 1974, which provides that the term of office of a judge shall not be reduced during the term for which he is elected, does not protect Justice Calogero from the effects of the shorter term of office, as provided in id., art. 5, § 3. Intervenor argues Justice Calogero and the electorate knew, at the time of his election, that the new constitution would be in effect when his new term of office began; that because of this "notice," the electorate should have known it was electing the judge for a ten year term.
Plaintiff, on the other hand, contends that the relevant date is the date of the election; that on that date there was only one law in effect dealing with the election or term of office, which was the 1921 Constitution providing for a fourteen year term.
Amici curiae filed briefs before this court, all of whom expressed an interest in the outcome of the case. Two of these parties seek to have the term fixed at fourteen years and one at ten years.
Unlike some other officers in Louisiana, all judges' terms of office are fixed in the constitution. When the election establishing the term is held, the constitution in effect at that time controls the length of the term. See In re Levy, 427 So.2d 844, 846 (La.1983); id. at 847; accord State ex rel. Collens v. Jumel, 30 La.Ann. 861, 864 (1878). The election must be for a specific office with a specific term and specific powers; otherwise the people would be electing a candidate to an unknown office, with an unknown term and unknown powers. This certainty on the date of the expression of the popular will is an essential element in the maintaining of the legitimacy of popular elections in a democratic society.
This necessity was not contravened by any provision of the new constitution. In fact, the new constitution expressly prohibited the retroactive application of its provisions. See State v. Shepherd, 332 So.2d 228, 230 (La.1976). To say that an election in 1974 was conducted for a term which is provided in the new constitution would be to give retroactive effect to the constitution. By its own terms, this is not allowed.
The term need not commence on the date of the election, nor within any specific time thereafter, unless specially provided by law; but the length of the term and the powers of the office must be, and are, fixed on the date of the election. The date of the assumption of the office has no relevance to the length of the term. It was, in fact, *739 the practice of this state to elect certain judges in one year for them to assume office more than one year later.[2] Their terms of office, however, were established on the date of the election.
Our conclusion that the term of office is controlled by the old constitution rather than the new constitution is fortified by Professor Lee Hargrave. He states:
"The reductions in term are inapplicable to terms of judges who were elected prior to the effective date of the new constitution. In Article XIV, Section 35 established the effective date of the constitution as `twelve o'clock midnight on December 31, 1974,' and Section 26 states, `this constitution shall not be retroactive and shall not create any right or liability which did not exist under the Constitution of 1921 based upon actions or matters occurring prior to the effective date of this constitution.' By virtue of these provisions, a judge who was elected prior to January 1, 1975 was elected to the longer term and not to the reduced term. This is also made clear in the Judiciary Article, where Article V, Section 21 provides: `The term of office ... of a judge shall not be decreased during the term for which he is elected.' The emphasis here is on the term for which elected, that term being the term under the old constitution, and for which he ran and was elected to while the old constitution was still in effect." Hargrave, The Judiciary Article of the Louisiana Constitution of 1974, 37 La.L.Rev., 765, 823 (1977).
It is the right of the people, when establishing a new government under a completely new constitution, to alter the rights created under the previous constitution, Sigur v. Crenshaw, 8 La.Ann. 401, 422 (1853), so long as no federal constitutional right is abridged. Such a power is inherent in the nature of changing governments.
Each of Louisiana's former constitutions included express provisions for the transition from one constitutional government to another, including the fixing of the dates of expiration for already sitting judges. See La. Const. of 1974, art. 14, § 15; La. Const. of 1921, art. 7, § 6; La. Const. of 1913, art. 87, ¶ 5; La. Const. of 1898, art. 87, ¶ 5; La. Const. of 1879, arts. 82 and 259; La. Const. of 1868, arts. 75 and 150; La. Const. of 1864, arts. 79 and 150; La. Const. of 1852, arts. 66 and 144; and La. Const. of 1845, arts. 65 and 144. Thus, it was within the power of the delegates to the constitutional convention of 1973 to include a provision which would have abolished all existing judicial offices on specific dates, or to provide that all judges elected after the adoption of the new constitution but prior to its effective date would be elected to a shorter term as provided for in the new constitution. Instead, however, the new constitutionwhich was not structurally inconsistent with the previous oneprovided for the continuation of the existing offices. This was accomplished through the effect of the non-retroactivity clause, La. Const. of 1974, art. 14, § 26, the allowance for elected officials already elected to remain in office until their successors are chosen, id., art. 14, § 15, and the provision prohibiting the shortening of judicial terms, id., art. 5, § 21.
Intervenor argues that plaintiff, and the electorate, had notice that the new constitution would take effect at the same time as the commencement of Justice Calogero's new term of office, and so they should have known that they were electing him, and he was running, for a ten year term. Because this court holds that the law in *740 effect on the date of the election is the controlling law for purposes of determining the length of the term of office, this argument is without merit. Assuming arguendo that the "notice" argument has some merit, the results in this case would be the same. The electorate could only have had notice that Calogero was elected at a time when the 1921 Constitution was in effect, and that the new constitution prohibited retroactive effect of its provisions.
Having decided that the 1921 Constitution in effect at the time of the election was the only law in effect, and therefore controlled the outcome of the election, it is unnecessary for this court to pass on the correctness of the trial court's rulings on the exceptions of no cause or right of action raised by some of the defendants.
For the reasons assigned, the judgment of the Nineteenth Judicial District Court decreeing the term of office for which Justice Pascal F. Calogero, Jr. was elected on November 5, 1974 shall expire on December 31, 1988, is affirmed.
LEMMON, J., concurs and assigns reasons.
MARCUS and BLANCHE, JJ., dissent and assign reasons.
LEMMON, Justice, concurring.
The 1974 Constitution did not provide, in express terms, for the length of term of a judge who was elected before the Constitution's effective date to a term which began contemporaneously with the Constitution's becoming effective. Since this is an "unprovided-for" situation, the courts must determine the issue by analogy and deduction from the overall provisions of the 1974 and 1921 Constitutions. Tate, Techniques of Judicial Interpretation in Louisiana, 22 La. L.Rev. 727 (1963).[1]
The 1921 Constitution fixed the terms of all justices of the Supreme Court and provided that "a justice shall be elected at every regular Congressional election in the order in which the terms shall expire". La. Const. Art. VII, § 7 (1921). The 1974 Constitution provides that all judges shall be elected at the regular congressional election and that the "election for the next term shall be held in the year in which the term expires". La. Const. Art. V, § 22(A) and (C).
When Justice Calogero was elected in 1974, the 1921 Constitution then in effect provided for a term of 14 years. If the 1974 Constitution had not gone into effect, he undoubtedly would have had the right to a 14-year term. Of course, the 1974 Constitution did go into effect, but it contained a provision that it was not retroactive and did not create any right or liability based on actions or matters occurring before January 1, 1975. La. Const. Art. XIV, § 26 (1974). The new Constitution unquestionably could not have affected rights or liabilities which were in existence because of events occurring before its effective date, and Section 26 made it clear that the new Constitution was not intended to create any right or liability based on preoccurring events when the right or liability did not exist before its effective date. In my opinion, Section 26 indicates an intent that any changes in the 1974 Constitution would not affect any rights or liabilities that arose from events occurring before January 1, 1975, whether or not such rights or liabilities had become vested before that date.
*741 Moreover, La. Const. Art. XIV, § 17 (1974) expressly repealed the 1921 Constitution, but not until January 1, 1975. The 1974 election, which occurred before that date, was necessarily governed by the provisions of the 1921 Constitution.[2] Therefore, a construction that the length of term of a justice elected in the 1974 election was governed by the 1921 Constitution and was not affected by the yet-to-become-effective 1974 Constitution is at least as equally reasonable as an opposite construction.[3]
The issue certainly is not free from doubt. Nevertheless, deducting from the overall provisions of both Constitutions, viewed in the light of logic and policy considerations, I conclude that the more appropriate resolution of the issue presented in this unprovided-for situation is that the justice elected in 1974 was elected to a 14-year term.
MARCUS, Justice (dissenting).
Justice Calogero's term for which he had previously been elected expired at midnight December 31, 1974. Hence, the new term for his office would commence on January 1, 1975. The new constitution became effective at midnight December 31, 1974. Under the new constitution, the term of a supreme court "judge" shall be ten years. The term of office for which Justice Calogero had been previously elected was not decreased by the new constitution as his term of office expired at midnight December 31, 1974, the time in which the new constitution went into effect. Hence, the term for which Justice Calogero was re-elected was ten years, the one governed by the new constitution which was in effect at the commencement of his new term.
Accordingly, I respectfully dissent.
BLANCHE, Justice (dissenting).
Justice Calogero was first elected to the Supreme Court to fill the unexpired term of Chief Justice E. Howard McCaleb, Jr. That term was to end on the 31st day of December, 1974. At the time when he was running for reelection, he was also aware that the Constitution of 1974 had been adopted and would become effective at midnight on December 31, 1974, the same time his term of office would end. He further knew that the term of office which he was then serving would no longer be for a 14 year term but had been changed by the 1974 Constitution and the term for the office for which he was running to fill provided for a 10 year term. He was in fact elected to fill the office which would commence on January 1, 1975, the day after the term of his present office had expired (December 31, 1974).
From these simple set of facts, the majority reasons that the date of the election, rather than the time the office commenced would control the length of the term of that office. In other words, the reasoning goes that although Justice Calogero was running for an office which was to commence on January 1, 1975, and provided for a 10 year term and which he would serve under the new constitution, if he got elected to that very office when the old constitution of 1921 was still in effect, the term of that office as provided for under the constitution in effect at the time of his election *742 would control. That constitution provided that the term of office of an Associate Justice of the Supreme Court was 14 years.
This reasoning is faulty because it establishes a term for an office for which he was running contrary to the term which was provided for by law when that office was to commence. It is further faulty because there was no Supreme Court judicial office in Justice Calogero's district in existence to which a 14 year term could apply at the time of his election except the one he was occupying and which would expire by its own terms the day before the one he was running for was to begin. Stated another wayalbeit the 1921 constitution was in effect at the time of the election and provided for a 14 year term, there simply was no office to which that constitution could have applied at the time of the election.
The majority also holds that "to say that an election in 1974 was conducted for a term which is provided in the new constitution would be to give retroactive effect to the constitution". This assumes that Justice Calogero had some right to a 14 year term of office at the moment he was elected. The fallacy in this assumption is revealed when it is realized that the only right Justice Calogero possessed at the time he was elected on November 24, 1974 was the right to take the oath of office to that office to which he had been elected when the office commenced on January 1, 1975.
It would seem to this writer that the court should simply hold that the term of office to which one is elected is controlled by the law in effect on the date which the office is to commence.
This dissent is in accord with In re Levy, 427 So.2d 844 (1983) which held in effect that when Judge Levy was elected to office in 1972, that although he was elected to a 12 year term, when that term commenced he was also mandated by law at the time to retire at age 80. Therefore, the opinion holds that Judge Levy's term of office could not have been longer from the time it commenced than the occurrence of his 80th birthday.[1]
I therefore respectfully dissent.
NOTES
[*] Justices Calogero and Watson are recused. Retired Judges Julian E. Bailes and James E. Bolin, appointed Justices ad hoc, served in their stead.
[1] Plaintiff presented arguments which attempt to show that the term of office for which he was elected actually began prior to the effective moment of the new constitution. For that reason, Justice Calogero took his oath of office on December 31, 1974, and began exercising the powers of his new term from that moment forward. To the contrary, intervenor argues that the first oath was premature, and that the second oath was taken after the effective moment of the new constitution. Because of this court's resolution of the matter on other grounds, it is unnecessary for the court to decide this hypertechnical issue at this time, and expresses no opinion on the matter.
[2] See La. Const. of 1921, art. 7, §§ 19 and 21(B) (amended 1958). The second circuit's at-large judge's term would expire on December 31, 1967. The successor to the office was to be elected at the same time as the congressional election, immediately preceding the year of the expiration of the term of office. The congressional elections were held in even numbered years. Thus the successor would be elected in 1966, but would not take office until January 1, 1968, more than one year after his election to the office. Nonetheless, everybody knew that he was being elected for that specific office and for a specific term of office, as fixed on the date of the election.
[1] Discussing the determination of unprovided-for cases, Justice Tate stated:

"[I]n the exercise of this authority to decide the unprovided-for case the Louisiana courts have followed civilian techniques of judicial interpretation, including the application or extension of code concepts to new fact situations by deduction or analogy. The approach of the judge in deciding the unprovided-for case is not, however, simply that of the logician; it is more akin to that of the legislator, for the judge attempts `to find a rule which the legislature would have enacted had it foreseen the case.' Not logic alone, then, but also policy considerations of what rule is best for the community as a whole and of what rule provides the fairest solution of the present controversy motivate the reasoning of the judge in formulating the rule to be used to decide the case for which the legislature did not provide." (Footnotes omitted.) 22 La.L. Rev. at 738.
[2] In addition to providing for a term of office for justices of the Supreme Court which was different from the previous Constitution, the 1974 Constitution provided for a shorter length-of-practice qualification (five years of practice instead of 10) and contained no minimum age requirement (previously 35 years of age). Certainly, a 34-year old with nine years of practice would not have been qualified in the 1974 election, although a person of the same age and experience would have been qualified in any election after January 1, 1975.
[3] The 1974 Constitution perhaps could have, but did not, provide that the 10-year term for a justice of the Supreme Court was to be applicable to a judge elected in 1974 for a term beginning January 1, 1975. Although the 1974 Constitution did prohibit reduction of the justice's term "during the term for which he is elected", the issue in this case is the length "of the term for which he is elected" and not the validity of an attempted reduction. Nevertheless, the 1974 Constitution's solicitude for protecting against reduction in terms of already-elected judges is a factor weighing in favor of the result reached by the majority.
[1] This writer dissented on the Levy case on other grounds for reasons assigned by Watson, J.