350 So.2d 615 (1977)
STATE of Louisiana
v.
Donald Ray SHEPPARD.
No. 59370.
Supreme Court of Louisiana.
September 19, 1977.
Rehearing Denied October 21, 1977.
*625 R. Judge Eames, Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., Ralph L. Roy, Marilyn C. Castle, Asst. Dist. Attys., for plaintiff-appellee.
MARCUS, Justice.
Donald Ray Sheppard was indicted by the grand jury for the Parish of East Baton Rouge for first degree murder in violation of La.R.S. 14:30. After trial by jury, he was found guilty as charged and sentenced to death. On appeal, defendant relies on one hundred and ten assignments of error for reversal of his conviction and sentence.

FACTS
The record reflects that the victim in this case, Valerie Morelock, a young LSU coed, returned to her residence at the High Point Apartments in Baton Rouge at about 2:00 a. m. on September 14, 1974, after dining with friends. Having apparently locked her keys in her own apartment, she knocked on the door of a second floor apartment tenant, Felix Vergara. When Vergara answered, he noticed that the young woman was dazed and did not communicate well. A few words were exchanged and as she began walking away she staggered and fell to her knees. At that moment, Vergara noticed a young black man come up the stairway from below and approach the vicinity where the victim had fallen. When he got as close as three feet to Miss Morelock, he turned left and disappeared from Vergara's sight. In the meantime, the young woman got up, walked back to Vergara's door and assured him that she was all right. She walked away again and Vergara returned to his apartment. A moment later, Vergara again looked out of his door and noted Valerie Morelock knocking at another door down the hall from his own. The same black male was again walking in her direction but turned left toward the laundry room after looking backward in Vergara's direction. Vergara returned to his apartment again, but remembering the girl's dazed state, he decided to dress and look for her. He did not find Valerie Morelock but he saw the same black man on the first floor of the apartment complex looking upward. Felix Vergara stated that he had gotten a good look at this individual since the apartment complex was well-lighted that evening.
At approximately 3:30 a. m., the victim rode her bike to the apartment of a friend about a block away. She visited for about fifteen minutes and then returned to the High Point Apartments where she knocked on the door of a friend who lived in Apartment 8, Peter Meisner. She advised Meisner that she was locked out of her own apartment and asked if she could come in. As the two stood in the doorway talking, two black men suddenly forced their way into the apartment behind Miss Morelock and one of them, armed with a .38 revolver, began hitting Meisner on the head with the weapon. After struggling with the assailants, Meisner was finally subdued and tied up face down on the living room floor. Miss Morelock was ordered to sit on the sofa but was soon taken into a back bedroom by one of the two intruders while the other man began to search the apartment looking for valuables. Thereafter, the two assailants switched places and the one guarding Meisner began to disconnect his stereo equipment. Moments later, a shot was heard from the back bedroom. Meisner heard the man who had been moving his stereo equipment go to the rear and ask whether the girl was dead. Then, the two returned to the front of the apartment and one of the men began moving the stereo out of an apartment window while the other assailant was heard going through drawers in the kitchen. Thereafter, the two approached Meisner and one rolled him over while the other stabbed him several times in the chest and back with a kitchen knife. They also took his watch which he had managed to hide under his stomach. The assailants then escaped through the living room window. After their departure, Meisner managed to free himself and staggered to the back bedroom where he found Valerie Morelock nude from the waist down with *626 a pillow over her head. There was a hole through the pillow and on removing it, Meisner saw that the young woman had been shot through the head. Meisner made his way to a nearby apartment where he called the police who arrived within thirty minutes of the crime and secured the scene. Meisner's stereo equipment and some other belongings were found outside the window where the perpetrators escaped; two of defendant's fingerprints were found on the stereo's plastic dustcover. An examination by the coroner of the victim revealed that she had had sexual relations.

ASSIGNMENTS OF ERROR NOS. 1, 1A, 2, 3, 4, 5, 6 AND 7
In these assignments of error, defendant urges alleged errors that occurred during preliminary examination. He complains of questions seeking to elicit identification of the perpetrators of the offense, lack of qualification of a state fingerprint identification expert, and overruling defense objections to the questioning of certain state witnesses on grounds of relevancy and lack of proper foundation. Defendant also complains of the trial judge's determination that there was "probable cause to hold the defendant for grand jury determination."
It is well settled that the question of probable cause and errors alleged to have occurred at the preliminary hearing are moot now that defendant has been tried and convicted by a jury. State v. Sneed, 328 So.2d 126 (La.1976); State v. Luckett, on rehearing, 327 So.2d 365 (La.1976). Accordingly, these assignments of error present nothing for our review.
Assignments of Error Nos. 1, 1A, 2, 3, 4, 5, 6 and 7 are without merit.

ASSIGNMENT OF ERROR NO. 9
Defendant contends the trial judge erred in denying his writ of habeas corpus filed after arrest and prior to the date set for defendant's preliminary hearing.
This court is without authority to review on an appeal from a conviction, the judgment of the district court denying a writ of habeas corpus. It is well settled that this court does not have appellate jurisdiction of habeas corpus proceedings in criminal cases. La.Code Crim.P. art. 369; State v. Howard, 281 So.2d 701 (La.1973); State v. Ames, 249 La. 685, 190 So.2d 223 (1966). Accordingly, this assignment of error presents nothing for our review.

ASSIGNMENT OF ERROR NO. 10
Defendant contends the trial judge erred in arraigning him on November 15, 1974 and setting the case for trial on December 18, 1974 over objections by defense counsel that he had not received formal notice of the indictment or been given adequate opportunity to study the indictment and confer with defendant on a plea. Inasmuch as counsel instructed defendant to stand mute, a plea of not guilty was entered of record by the trial court in accordance with La.Code Crim.P. art. 554.
The record reflects that counsel representing defendant at arraignment had also represented defendant at the preliminary hearing on the offense two weeks earlier. He therefore was well acquainted with the nature of the charge filed against defendant. Moreover, the trial judge reserved defense counsel's right to file motions regarding the case until December 2, 1974.
This court has held that a request for postponement of arraignment and fixing a trial date based on insufficient time for preparation by defense counsel addresses itself to the sound discretion of the trial judge. State v. Green, 210 La. 157, 26 So.2d 487 (1946). We cannot say the trial judge abused his discretion in the instant case. In any event, defendant's subsequent motion to void the original arraignment and trial date was granted on December 17, 1974. Defendant was rearraigned on January 13, 1975 and entered a plea of not guilty. No request for a further continuance was made at this time. Since defendant's original arraignment was nullified and he was rearraigned at a later date at which time counsel had had ample time for preparation, defendant could not have suffered any prejudice *627 from the initial arraignment on November 15, 1974.
Assignment of Error No. 10 is without merit.

ASSIGNMENTS OF ERROR NOS. 11, 12, 13, 14, 15, 17 and 31A
These assignments of error relate to motions by the defendant to quash the indictment filed against him.
In Assignments of Error Nos. 11 and 12, defendant contends the trial judge erred in refusing to quash the indictment on the ground that the statute under which he was charged was unconstitutional as applied. Defendant additionally urges that the trial judge erred in not granting a stay order while defendant sought supervisory writs to this court on the issue.
Defendant argues that La.R.S. 14:30 (1973) was applied against the poor, racial minorities and members of the male sex so as to result in the discriminatory imposition of the death penalty by virtue of a jury's unfettered discretion to return a lesser responsive verdict in the case of favored classes of persons.
As a result of the decision by the United States Supreme Court in Roberts v. Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976) declaring Louisiana's mandatory death penalty for first degree murder unconstitutional and subsequent decisions of this court under the mandate of Roberts, defendant is entitled to be resentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence for twenty years, which sentence represents the most severe valid penalty established by the legislature for criminal homicide at the time of this offense. State v. Jenkins, 340 So.2d 157 (La. 1976); State v. Clark, 340 So.2d 208 (La. 1976). Accordingly, we consider that the Roberts decision and our decisions subsequent thereto render moot defendant's complaint concerning the discriminatory imposition of the death penalty under La.R.S. 14:30 (1973). In view of our disposition of the merits of this issue, we similarly find no merit in defendant's further assigned error regarding the refusal of the trial judge to grant a stay order pending application for writs to this court.
In Assignments of Error Nos. 13, 14, 15, 17 and 31A, defendant contends the trial judge erred in overruling his motions to quash the indictment on the ground of misjoinder of offenses and in overruling his objections to the amendment of the indictment and request for a continuance pursuant to the amendment.
The record reflects that defendant was indicted by the grand jury for the Parish of East Baton Rouge for commission of first degree murder as defined by La. R.S. 14:30(1) (1973). The indictment further more specifically tracked the statute and charged that defendant committed the murder with specific intent to kill and inflict great bodily harm and that he was engaged in the perpetration and attempted perpetration of aggravated rape and armed robbery. The day before trial was initially set to commence, the district attorney amended the indictment[1] to additionally charge defendant with first degree murder under the provisions of La.R.S. 14:30(4) in that he had the specific intent to kill and inflict great bodily harm upon more than one person.
Defendant claims that the reference to perpetration and attempted perpetration of aggravated rape and armed robbery in accordance with La.R.S. 14:30(1) as well as the amendment of the indictment to include both paragraphs (1) and (4) of the statute demonstrates that the indictment improperly joined more than one offense in violation of La.Code Crim.P. art. 493 (1966).
There is no merit to this contention. The indictment in the instant case charged defendant with only one offense, first degree murder. The fact that the statute itself makes certain specified felonies an essential element of the crime as defined in La.R.S. *628 14:30(1) does not alter the fact that only one offense is charged. Moreover, we have held that it is entirely proper for the state to indict defendant for murder by reciting different sets of circumstances designated as constituting the crime in various paragraphs of the statute. State v. Nix, 327 So.2d 301 (La.1975).
We similarly find no merit in defendant's complaint that the amendment to the indictment was untimely and that he should have received a continuance. The indictment was timely amended before trial began in full compliance with La.Code Crim.P. art. 487.
Inasmuch as counsel had represented defendant at the preliminary hearing and was fully aware of the factual context of the case, the trial judge denied a continuance finding that defendant had made no showing that he had been prejudiced in his defense on the merits. We have held that it is incumbent upon defendant to show in what respect his defense has been prejudiced by the amendment of the indictment. State v. Royal, 255 La. 651, 232 So.2d 465 (1970). A mere allegation that his defense will be affected does not constitute such a showing of prejudice as to render the trial judge's refusal of a continuance reversible error. State v. Sharp, 321 So.2d 331 (La.1975). In any event, while at the time of the indictment's amendment, trial was scheduled to begin the next day, December 18, 1974, trial did not actually begin until January 13, 1975 due to delays caused by hearings on numerous pretrial motions filed by defendant. Hence, defendant had ample time to make any adjustments in his defense necessitated by the amendment of the indictment.
These assignments of error lack merit.

ASSIGNMENTS OF ERROR NOS. 16, 22, 28, 29, 30, 31, 59 AND 71
These assignments of error relate to defendant's attempt to discover information concerning the offense and the state's case against him.
In Assignment of Error No. 16, defendant contends the trial judge erred in denying his motion for production of the rap sheets of certain persons expected to be witnesses for the state and for all information relating to the previous use of these individuals as police informers. We have held that the defendant is not entitled to discover from the district attorney information concerning past offenses of state witnesses under circumstances such as these. However, arrest and conviction records are public records and are available to the defense in accordance with La.R.S. 44:1 and 3. State v. Lee, 340 So.2d 1339 (La.1976). Similarly, defendant was not entitled to discover information concerning the activities of state witnesses as informants. The informer privilege is the privilege of withholding the identity of an informant who supplies information to law enforcement officials concerning crime. It is founded upon public policy and seeks to advance the public interest in effective law enforcement. Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). This court has consistently held that an informant's identity will be revealed only where a defendant demonstrates exceptional circumstances warranting disclosure. State v. Robinson, 342 So.2d 183 (La.1977); State v. Russell, 334 So.2d 398 (La.1976). Such circumstances were not demonstrated in this case. For these reasons, the trial judge correctly denied production of the information sought herein.
In any event, the record reflects that the trial judge issued subpoenas for the requested rap sheets, and the district attorney offered to produce them voluntarily if they were, in fact, in his files. Moreover, the individuals alleged to have functioned as state informants did not even appear as witnesses at trial. Accordingly, defendant suffered no prejudice from the ruling of the trial judge in this instance.
In Assignment of Error No. 22, defendant contends the trial judge erred in ruling sufficient the state's answers to certain questions propounded in defendant's request for a bill of particulars. Defendant had requested information as to the particular *629 statutes under which defendant was charged, the acts defendant allegedly committed resulting in the death of the victim, whether defendant was armed with a dangerous weapon and if so what weapons, and the caliber and type of weapon if the weapon was a gun.
The state answered the questions concerning the statute under which defendant was charged by referring defendant to the indictment which specifically stated that defendant was charged with first degree murder as defined in La.R.S. 14:30(1) and (4). The trial judge correctly ruled this response sufficient in law. The state answered defendant's questions concerning defendant's acts in connection to the murder by referring him to the transcript of the preliminary hearing filed of record. The state additionally disclosed in its answer that the victim died of a cerebral hemorrhage due to a gunshot wound in the brain inflicted by a .38 caliber weapon.
The record of the preliminary hearing incorporated by reference in the state's answer reflects that defendant and his severed co-defendant were principals in the offense charged. At the hearing on the state's answers to the request for particulars, the district attorney likewise indicated that the state would rely in its prosecution of the case on the law of principals. It was therefore unnecessary for the state to further specify what acts defendant was individually responsible for. State v. Square, 257 La. 743, 244 So.2d 200 (1971). The trial judge did not err in ruling the state's answers to these inquiries sufficient.
In Assignments of Error Nos. 28 and 29, defendant complains of the trial judge's ruling refusing to compel production of statements made by state witnesses Peter Meisner and Felix Vergara shortly after the offense and refusing to conduct an in camera inspection of the state's files to determine whether the statements were exculpatory and therefore discoverable by defendant under the doctrine of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
In Assignment of Error No. 31, defendant contends the trial judge should have ordered production of a taped statement reduced to writing of defendant's severed co-defendant.
The record reflects that the state informed the court that it had no statements favorable to the defendant. The trial judge ordered the state to produce any exculpatory material and offered to inspect the requested witnesses' statements for exculpatory information if defendant would specify what information the state had that he considered exculpatory. Defendant declined to contradict the state's assertion that the statements did not contain exculpatory material. The state additionally advised the court that the taped statement given by the co-defendant was in no way exculpatory. Nevertheless, in response to a supplemental motion for this information, the state voluntarily gave defendant a copy of the co-defendant's statement. A copy of Felix Vergara's full statement was also given defendant on request at trial. It was subsequently read to the jury by Vergara during defense cross-examination. Peter Meisner did not make any identification of defendant at trial.
The general rule is well settled that a defendant is not entitled to pretrial discovery of written statements of prospective prosecution witnesses in the district attorney's files. State v. Gray, 286 So.2d 644 (La.1973); State v. Curry, 262 La. 616, 264 So.2d 583 (1972). Nevertheless, the prosecutor may not suppress evidence, in the face of a defense production request, where the evidence is favorable to the accused and is material either to guilt or punishment. Brady v. Maryland, supra; United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). But there is no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of any or all police investigative work on a case. United States v. Agurs, supra; Moore v. Illinois, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972). We have consistently held that the state is not required to open its files to the accused and allow him to *630 search them and decide what is exculpatory. State v. Robinson, 342 So.2d 183 (La.1977); State v. Johnson, 324 So.2d 349 (La.1975); State v. Williams, 310 So.2d 528 (La.1975). Under the circumstances presented herein, we are unable to say that defendant suffered any prejudice from the trial judge's failure to inspect or order production of the statements made by the witnesses.
In Assignments of Error Nos. 30 and 59, defendant contends the trial judge erred in refusing to order production prior to trial of a written memorandum made by an assistant district attorney concerning an oral exculpatory statement previously made by the defendant and in refusing to order disclosure on the day of trial of the content of the oral exculpatory statement. The oral statement referred to was a purported alibi related to the district attorney and his assistant shortly after defendant's arrest. The statement was not recorded while it was being given but was only subsequently made the subject of notes concerning the case.
In our view, defendant's statement is properly classified as an oral statement inasmuch as it was not subscribed to by the accused. State v. Perkins, 337 So.2d 1145 (La.1976). It is well settled that a defendant is not ordinarily entitled to pretrial information from the state concerning oral statements made by him. State v. Perkins, supra; State v. Breston, 304 So.2d 313 (La.1974); State v. St. Amand, 274 So.2d 179 (La.1973); State v. McLeod, 271 So.2d 45 (La.1973). We are further satisfied that, under the facts of this case, defendant's own oral exculpatory statements which were testified to by the district attorney and his assistant at the preliminary hearing did not constitute material required to be produced under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194,10 L.Ed.2d 215 (1963). Moreover, even assuming that the statement was Brady information, it cannot be said that the omitted evidence created a "reasonable doubt that did not otherwise exist." In United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the United States Supreme Court noted that "a constitutional violation of the prosecutorial duty to disclose is not demonstrated unless the omission is of sufficient significance to amount to a denial of defendant's right to a fair trial." The state made no use of the oral statement at trial nor did defendant testify regarding the purported alibi.
In Assignment of Error No. 71, defendant contends the trial judge erred in refusing to order the production of the transcript of the grand jury testimony of Felix Vergara. During trial, the jury was excused while a hearing was conducted on defendant's motion to suppress the in-and-out-of-court identifications of Felix Vergara. At the hearing, Vergara testified that shortly after the offense he had made certain statements to investigating officers tending to implicate defendant in the crime. Vergara testified that afterwards, however, fearing publicity that might bring him to the attention of immigration authorities he had represented at police lineups and at the preliminary hearing that he was unable to identify defendant, although he actually was sure that the man he had seen was the defendant. After consulting an attorney, Vergara decided to tell the truth and identify defendant at the grand jury hearing on the case. Moreover, he indicated at the suppression hearing that he would be ready and able to identify defendant at trial.
Defendant contends that, in view of Vergara's inconsistent identification testimony, he was entitled to a transcript of the grand jury proceeding for use in cross-examining this witness.
This court has consistently held that a defendant is not entitled to production of a transcript of the secret grand jury proceedings against him. La.Code Crim.P. art. 434; State v. Sneed, 328 So.2d 126 (La.1976); State v. Williams, 310 So.2d 528 (La.1975). The transcript of grand jury proceedings may not be used at trial even in the conduct of cross-examination. State v. Ivy, 307 So.2d 587 (La.1975). The purpose of this rule is not to protect a defendant or witness at a subsequent trial, but to encourage the free disclosure of information about crime. State v. Ivy, supra.
*631 Defendant nevertheless argues that he is entitled to this information under the doctrine of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). We rejected a similar contention in State v. Williams, 310 So.2d 528 (La.1975). Brady holds only that a prosecutor may not suppress evidence in the face of a production request where the evidence is favorable to the accused and is material either to guilt or innocence. There is no indication that the grand jury testimony was favorable. In fact, Vergara testified at trial that he had positively identified defendant at the grand jury hearing. The transcript of the proceeding could only have been of value in preparation of cross-examination questions that would attempt to discredit the witness by demonstrating the occasions when the witness did and did not identify defendant. In fact, the whole account of the varying identifications was presented to the jury. Hence, the damaging evidence concerning Vergara's credibility was not withheld from the finders of fact. Therefore, even if the grand jury testimony were to be considered Brady material, failure to produce it would not warrant reversal of this conviction. In United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the United States Supreme Court held that a new trial is not warranted and constitutional error has not been committed unless the omitted evidence creates a reasonable doubt that did not otherwise exist. This means that the omission must be evaluated in the context of the entire record.
Under the circumstances in this case, we are unable to say that production of the grand jury transcript would have been useful in creating reasonable doubt that did not otherwise exist. Accordingly, we find no error in the ruling of the trial judge denying production of Vergara's grand jury testimony.
These assignments of error have no merit.

ASSIGNMENTS OF ERROR NOS. 18, 19, 20 AND 21
These assignments of error relate to the appointment of a sanity commission to determine whether defendant was capable of understanding the proceedings against him and of assisting in his defense and to alleged errors committed at the hearing held to determine these issues.
In Assignment of Error No. 18, defendant contends the trial judge erred in appointing a sanity commission rather than committing defendant to the East Louisiana State Hospital for observation and evaluation.
La.Code Crim.P. art. 643 provides that the court may order a mental examination of the defendant when it has reasonable ground to doubt the defendant's mental capacity to proceed. La.Code Crim.P. art. 644 further mandates that, when a mental examination is ordered, the court shall appoint a sanity commission to examine and report upon the mental condition of the defendant. The actions of the trial judge in appointing a sanity commission were in strict compliance with the law as stated in these articles. Defendant made no showing in his application for commitment to the state hospital that under the facts of this case defendant's present capacity to proceed could not be determined by a sanity commission. Moreover, both physicians appointed to serve on the commission testified at the sanity hearing that in their view further testing or observation of defendant was unnecessary since he had exhibited no signs of any mental problems during examination. Accordingly, we find no error in the ruling of the trial judge ordering the appointment of a sanity commission.
In Assignment of Error No. 19, defendant contends the trial judge erred during the sanity hearing in not allowing him to question one of the physicians appointed to the sanity commission, Parish Coroner Hypolite Landry, concerning the examination of another individual (prisoner) who had committed suicide after having been determined to be legally sane. Defendant was attempting to draw a parallel with defendant in this case, who allegedly had *632 manifested suicidal tendencies in a letter to his family. Dr. Landry stated that, even assuming that a person had suicidal tendencies, such a finding would not mean that the individual was not able to understand the nature of the proceedings against him and assist counsel in his defense. On this basis, the trial judge ruled that questions concerning a sanity evaluation in another case were irrelevant. We find no abuse of discretion on the part of the trial judge in his control of the examination of this witness.
In any event, the record reflects that defendant was successful in directing this line of questions to the second physician appointed to the sanity commission (Dr. Francisco A. Silva). Accordingly, defendant suffered no prejudice from the ruling of the trial court in this instance.
Defendant assigns as Error No. 20 the ruling of the trial court overruling his objections to the testimony of Deputy Coroner, Dr. Francisco A. Silva.[2] The basis of the objection was that Dr. Silva was affiliated with the coroner's office and that persons from that office would be material witnesses for the state in the proceedings against defendant.
We have held that the selection of physicians to serve on a sanity commission rests within the sound discretion of the trial judge. State v. Vince, 305 So.2d 916 (La. 1974). In the instant case, Dr. Silva did not appear as a witness from the coroner's office at trial. In fact, he testified at the sanity hearing that he had no connection with the investigation of the offense charged. We note, moreover, that defendant has made no showing in this case that Dr. Silva did not conduct his examination of defendant impartially. Under these circumstances, the trial judge did not err in overruling defendant's objection to Dr. Silva's testimony.
Defendant finally argues that the trial court erred in finding that defendant was able to understand the proceedings against him and to assist in his defense (Assignment of Error No. 21).
The law of the state is clear that every man is presumed sane and the burden is on the accused to establish by a clear preponderance of the evidence that he lacks the capacity to understand the nature and object of proceedings against him and to assist in conducting his defense. State v. Bastida, 310 So.2d 629 (La.1975); State v. Edwards, 257 La. 707, 243 So.2d 806 (1971); State v. Scott, 243 La. 1, 141 So.2d 389 (1962). In the instant case, the unrebutted testimony offered at the sanity hearing preponderated to establish that defendant enjoyed the mental capacity to understand the nature of the proceedings against him and to assist in the preparation and conduct of his defense. Such a factual determination by the trial judge is given great weight and will not be disturbed upon appeal unless clearly erroneous. State v. Hall, 262 La. 135, 262 So.2d 498 (1972); State v. Fairley, 260 La. 85, 255 So.2d 83 (1971). We note, moreover, that the trial judge reserved defendant's right to interrupt trial in the event that subsequent evaluations by his own expert witnesses demonstrated that defendant was presently incapable of proceeding. No such evidence was ever offered. In sum, we find no error in the finding of the trial judge that defendant had the mental capacity to proceed in that he was capable of understanding the proceedings against him and assisting in his defense.
These assignments of error have no merit.

ASSIGNMENTS OF ERROR NOS. 23 AND 24
In Assignment of Error No. 23, defendant contends the trial judge erred in denying his motion to recuse the district attorney and his entire staff from participating in the preparation and prosecution of the case. He argues that the district *633 attorney was personally interested in the case and that he and members of his staff were to be material witnesses at trial. The claimed interest in the case which is in conflict with a fair and impartial administration of justice allegedly results from the fact that when defendant was arrested, he was taken to the district attorney's office where he was interviewed by the district attorney and an assistant. Defendant also adduced evidence that the district attorney held a press conference to release news that arrests had been made in the case. In our view, the showing made by defendant does not establish that the district attorney acted in any way other than in a manner consistent with his function as the prosecutorial force of the parish. Defendant did not demonstrate grounds for recusal under La.Code Crim.P. art. 680. See State v. Bennett, 341 So.2d 847 (La.1976). Accordingly, the trial judge properly denied defendant's motion to recuse the district attorney and his staff.
In Assignment of Error No. 24, defendant contends the trial judge improperly restricted his examination of the assistant district attorney during the recusal hearing. Defendant was attempting to question the witness regarding notes he made concerning the case, which notes allegedly contained references to an oral statement made by defendant shortly after his arrest. The trial judge properly ruled that defendant was not entitled to discover his own oral inculpatory statements [3] and that notes made by the assistant district attorney were not relevant to defendant's recusal motion. We find no abuse of discretion in the ruling of the trial judge controlling the examination of this witness.
These assignments of error have no merit.

ASSIGNMENTS OF ERROR NOS. 25, 26, 27, 27A AND 27B
These assignments of error relate to defendant's motions for a change of venue.
In Assignment of Error No. 25, defendant contends the trial judge erred during the hearing on the motion in limiting his examination of the student editor of a college newspaper published for circulation on the Louisiana State University campus at Baton Rouge. Defendant attempted to question the student concerning a Stop Rape Task Force and rape symposiums held on the college campus. The witness testified that there had been concern over rapes prior to the instant offense and that the symposium referred to was given in connection with the publication of a book on the subject by an author from out of the state. The trial judge ruled that in the absence of an indication of connexity with the case, such testimony was not relevant to show that defendant could not receive a fair and impartial trial in the parish.
It is well settled that much discretion is afforded a trial judge in determining the relevancy of evidence. State v. Mero, 319 So.2d 303 (La.1975); State v. Johnson, 263 La. 462, 268 So.2d 620 (1972). La.R.S. 15:275 further provides that, in the discipline of his court, the trial judge is vested with sound discretion to stop the irrelevant examination of a witness. We find no abuse of discretion by the trial judge in this instance.
In Assignment of Error No. 26, defendant contends the trial judge erred in quashing subpoenas duces tecum for production of a tape of a radio broadcast during which the parish coroner referred to this case. The trial judge quashed the subpoena after hearing testimony that the tape had been routinely erased and was not available for production. We find no error in the ruling of the trial judge complained of herein.
In Assignments of Error Nos. 27 and 27A, defendant complains of the ruling of the trial judge terminating the hearing on defendant's motion for a change of venue and refusing to accept testimony on further supplemental motions.
The venue hearing in the instant case lasted three days; defendant called eighteen *634 witnesses and introduced ten exhibits of news coverage. Many of the witnesses were members of the local news media called to support defendant's principal contention that a fair trial could not be had in the parish due to excessive media coverage. The record reflects that testimony regarding defendant's first written supplemental motion and alternative request for a continuance was heard by the court. Defendant's second supplemental motion was prompted by a radio broadcast wherein the coroner referred to this offense. As previously noted, the evidence of the actual broadcast was no longer available; however, testimony concerning the nature of the coroner's remarks was presented. Hence, the trial judge does not appear to have refused to hear any evidence in support of defendant's motions that would have been other than cumulative in nature. No further supplemental motions or offers of proof were made by defendant. Accordingly, we find no error in the ruling of the trial judge.
In Assignment of Error No. 27B, defendant contends the trial judge erred in denying his motion for a change of venue. A hearing on the motion was held in accordance with State v. Bell, 315 So.2d 307 (La. 1975). At that time, defendant was permitted to introduce evidence concerning publicity given the case, prejudice in the public mind and other evidence to support his claim that an impartial trial could not be obtained in the parish. At the conclusion of a lengthy hearing on the motion, the trial judge denied the motion for a change of venue.
La.Code Crim.P. art. 622 provides:
A change of venue shall be granted when the applicant proves that by reason of prejudice existing in the public mind or because of undue influence, or that for any other reason, a fair and impartial trial cannot be obtained in the parish where the prosecution is pending.
In deciding whether to grant a change of venue the court shall consider whether the prejudice, the influence, or the other reasons are such that they will affect the answers of jurors on the voir dire examination or the testimony of witnesses at the trial.
This court has consistently held that to warrant a change of venue the burden is on the accused to establish that he cannot obtain a fair trial in the parish where the prosecution is pending. Article 622 requires a showing of more than mere knowledge by the public of facts surrounding the offense. It requires, in addition, proof of such prejudice in the public mind that a fair and impartial trial cannot be obtained in the parish. State v. de la Beckwith, 344 So.2d 360 (La.1977); State v. Berry, 329 So.2d 728 (La.1976); State v. Stewart, 325 So.2d 819 (La.1976). The granting or denial of the motion for change of venue rests within the sound discretion of the trial judge, and his ruling denying the motion will not be disturbed unless the evidence affirmatively shows that the ruling was erroneous and an abuse of judicial discretion. State v. de la Beckwith, supra; State v. Bennett, 341 So.2d 847 (La.1976); State v. Stewart, supra.
Under the evidence presented to support the motion for a change of venue, we cannot say that the trial judge abused his discretion. At the hearing, defendant offered the testimony of several newspaper and television reporters, various news stories on the crime and transcripts of television accounts of the offense. While there was extensive coverage of the offense, there was no showing that the media reports were other than objective or that the offense generated more publicity than other crimes of a similar nature. State v. Stewart, 325 So.2d 819 (La.1976); State v. Foy, 278 So.2d 38 (La.1973). One of the telecast broadcasts concerned a press conference wherein the district attorney announced that arrests had been made in the case. It appears, however, that the information released was routine, factual and not inflammatory. Most of the publicity concerning the offense occurred immediately after the crime was committed. The record indicates that further articles reporting on the disposition of pretrial procedures and motions were factual and ceased well before trial *635 commenced. The voir dire examination reveals that, while some of the prospective jurors had heard or read of the incident, they had formulated no opinion in regard thereto and stated that they could render a fair and impartial verdict on the evidence presented at trial. Defendant additionally claimed that a security fence erected at the apartment where the crime was committed, a bumper sticker bearing the name of the victim and the institution of a Rape Crisis Center reflected the prejudicial attitude of the community against defendant. The record suggests, however, that neither the fence nor the Rape Crisis Center were associated in the minds of the public with the particular crime involved in the instant case. Moreover, the bumper sticker referred to bore no reference to defendant and was distributed only on the LSU campus. Only one of defendant's witnesses affirmatively indicated that the sentiments he had heard expressed led him to believe that defendant could not receive a fair trial. The other witnesses were generally of the opinion that interest in the offense had not been so great as to preclude a fair and impartial trial in the parish. In sum, based on the evidence adduced, we are unable to say that the trial judge abused his discretion in denying the change of venue.
These assignments of error have no merit.

ASSIGNMENT OF ERROR NO. 27C
Defendant contends the trial judge erred in denying his motion to dismantle a shield erected in the courtroom between the court area and spectator gallery or alternatively to try the case in another courtroom. He argues that the shield, which was erected in connection with a previous trial, created prejudice against him in the minds of the jurors.
La.Code Crim.P. art. 17 provides that the court has the duty to require that criminal proceedings shall be conducted with dignity and in an orderly and expeditious manner and to so control the proceedings that justice is done.
We have held that all matters pertaining to the conduct of the trial are within the sound discretion of the trial judge and his rulings thereon will not be disturbed unless there is an abuse of discretion. State v. Reeves, 263 La. 923, 269 So.2d 815 (1972); State v. Riley, 261 La. 782, 260 So.2d 914 (1972). Other than defendant's own assertion that the shield would unfairly prejudice the jurors by reminding them of the trial for which it was constructed, there is no showing of actual prejudice suffered. After reviewing a photograph of the shield and its relation to the courtroom, we satisfied that the trial judge did not abuse his discretion in refusing to dismantle the shield or alternatively to try the case in another courtroom.

This assignment of error is without merit.
ASSIGNMENTS OF ERROR NOS. 32, 32A, 33, 36, 37, 38, 41, 43, 44, 46, 56, 58, 60, 61, 62, 63, 64, 96, 97 AND 98
Defendant contends the trial judge erred in overruling his objections and motions for mistrial wherein he argued that the state improperly referred to the law of co-conspirators and principals during its voir dire examination of prospective jurors and during its opening statement. More particularly, he complains of the reading by the state of La.R.S. 15:455 and La.R.S. 14:23-26 as well as certain passages contained in Corpus Juris Secundum relative to principals and co-conspirators. He similarly contends that the trial judge erred in charging the jury concerning these issues.
Defendant argues that the law of co-conspirators and principals was inapplicable to this case inasmuch as defendant was not charged with conspiracy. La.R.S. 14:26 defines the offense of conspiracy as follows:
Criminal conspiracy is the agreement or combination of two or more persons for the specific purpose of committing any crime; provided that an agreement or combination to commit a crime shall not amount to a criminal conspiracy unless, in addition to such agreement or combination, one or more of such parties *636 does an act in furtherance of the object of the agreement or combination.
Where the intended basic crime has been consummated the conspirators may be tried for either the conspiracy or the completed offense, and a conviction for one shall not bar a prosecution for the other.
. . . . . .
A criminal conspiracy to commit any given offense is an inchoate crime, separate and distinct from the completed criminal conduct. However, when a defendant is on trial for the completed offense and the facts of the case establish the existence of a conspiracy, reference to the law of conspiracy may be relevant and permissible in order to allow the state to take advantage of the evidentiary rules found in La.R.S. 15:455, which provides:
Each coconspirator is deemed to assent to or to commend whatever is said or done in furtherance of the common enterprise, and it is therefore of no moment that such act was done or such declaration was made out of the presence of the conspirator sought to be bound thereby, or whether the conspirator doing such act or making such declaration be or be not on trial with his codefendant. But to have this effect a prima facie case of conspiracy must have been established.
Therefore, if the state did in fact establish a prima facie case of conspiracy, the various references to the law of conspiracy during voir dire and during the state's opening statement were proper. State v. Bennett, 341 So.2d 847 (La.1976); State v. Kaufman, 331 So.2d 16 (La.1976).
The type of proof necessary to establish a conspiracy may be by direct or circumstantial evidence. State v. Kaufman, supra. In State v. Carter, 326 So.2d 848 (La.1975), we held that, when the only showing of conspiracy is that two people committed a crime, and there is no showing that defendant either committed or conspired to commit the criminal act, no prima facie case of conspiracy has been established. We further held that the fact, alone, that two or more have committed the crime charged is not sufficient to establish a prima facie case of conspiracy. In the instant case, however, we find that there was a prima facie showing that two persons agreed or combined for the specific purpose of committing a crime. Felix Vergara testified that on three separate occasions on the night of the crime, within two hours of its commission, he saw defendant approaching the victim in the hallway of the apartment building and later looking up the stairs. Then, when Peter Meisner and the victim were talking in the hallway some time later, two individuals forced their way into the apartment. They ordered the victim to sit on the sofa and, after tying Meisner up, ordered the victim into the back bedroom. Alternatively, they spent time in the rear bedroom with the victim and searched the apartment for valuables. One of the perpetrators disconnected Meisner's stereo equipment and moved it over to the living room window. After hearing a shot, Meisner heard one of the assailants ask the other if the victim had been killed. As one of the men rolled Meisner over on the floor, the other stabbed him several times with a knife before exiting together through a window in the front room. They also took Meisner's watch which he had managed to place under his stomach. Defendant's fingerprints were lifted from Meisner's stereo dustcover which was found outside the window through which the assailants escaped. The testimony of Felix Vergara together with the fingerprint evidence tended to establish that defendant was one of the two men who committed the crime. Since Meisner was unable to indicate which of the two assailants had actually shot the victim and robbed and stabbed him, it was relevant for the state to refer to the law of conspiracy because it sought to bind defendant by the acts of his cohort, even if defendant did not personally murder the victim. Inasmuch as the state's evidence established at least a prima facie case of conspiracy, there was no error in the state's correct references to the law of conspiracy during voir dire examination of prospective jurors and during its opening statement.
*637 Since defendant was being charged as a principal for the offense of first degree murder and the state sought to attribute to defendant acts which may have been directly committed by his conspirator at the scene of the crime, the law regarding principals was also relevant. Hence, we similarly find no error in the trial judge's rulings with respect to the state's references to the law of principals during its voir dire examination and opening statement. La.Code Crim.P. arts. 786 and 766.
A trial judge is required to charge the jury as to the law applicable to the case. La.Code Crim.P. art. 802. Since a prima facie case of conspiracy was established, the law of conspiracy was clearly applicable to the case. The same is true relative to the law of principals. Accordingly, the trial judge did not err in charging the jury concerning these areas of law. State v. Kaufman, 331 So.2d 16 (La.1976).
Inasmuch as the foregoing defense objections were properly overruled by the trial judge, defendant's motions for mistrial based on these rulings were likewise properly denied.

These assignments of error are without merit.
ASSIGNMENTS OF ERROR NOS. 34, 35, 39, 40, 42, 45, 47, 48, 49, 50, 51, 52, 53, 54, 55 AND 57
These assignments of error relate to alleged errors occurring during voir dire examination of prospective jurors.
In Assignments of Error Nos. 48, 51, 52, 53 and 54, defendant contends the trial judge erred in excusing for cause four prospective jurors challenged by the state based on their sentiments regarding the death penalty and in denying his motion for mistrial based on this ground.
The record reflects that these veniremen clearly indicated they could not return a verdict carrying the death penalty even if such verdict were supported by the evidence. Accordingly, the trial judge did not err in excusing these jurors for cause. Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968); La.Code Crim.P. art. 798; State v. Williams, 343 So.2d 1026 (La.1977).
In any event, in view of the decision by the United States Supreme Court in Roberts v. Louisiana, 428 U.S. 325, 96 S.Ct. 3001,49 L.Ed.2d 974 (1976) declaring Louisiana's mandatory death penalty for first degree murder unconstitutional and the subsequent decisions of this court under the mandate of Roberts, defendant is entitled to be resentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence for twenty years, which sentence represents the most severe valid penalty established by the legislature for criminal homicide at the time of this offense. State v. Jenkins, 340 So.2d 157 (La.1976); State v. Clark, 340 So.2d 208 (La.1976). We have uniformly held that a defendant insulated from the death penalty has no valid Witherspoon complaint. State v. Williams, supra; State v. Nicolaus, 340 So.2d 296 (La.1976); State v. Hunter, 340 So.2d 226 (La.1976); State v. Miles, 339 So.2d 735 (La.1976).
In Assignments of Error Nos. 34, 40, 45, 47, 49 and 50, defendant contends the trial judge erred in overruling his objections and motions for mistrial based on the state's use of its peremptory challenges to exclude black prospective jurors allegedly in violation of his rights to due process and equal protection under the law.
The United States Supreme Court, in Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), has held that an accused is not denied the equal protection of the law when the state, through the use of its peremptory challenges, prevents blacks from serving on the jury unless he can prove systematic exclusion over a period of time. This court has adopted those views expressed in Swain and has refused to find a denial of equal protection unless this historical pattern of systematic exclusion is demonstrated. State v. Johnson, 343 So.2d 155 (La.1977); State v. Bennett, 341 So.2d 847 (La.1976); State v. Haynes, 339 So.2d 328 (La.1976). Defendant has not *638 made the requisite showing in this case. Accordingly the trial judge did not err in overruling defendant's objections and motions for mistrial predicated on this ground.
Defendant contends in Assignment of Error No. 35 that the trial judge erred in denying his challenge for cause of prospective juror Patricia Brockway. He argues that the prospective juror was not impartial. Defendant exercised a peremptory challenge against Mrs. Brockway and exhausted his peremptory challenges before the completion of the panel. La.Code Crim.P. art. 800.
This court has repeatedly held that the trial judge is vested with broad discretion in ruling on challenges for cause, and only where it appears, upon review of the voir dire examination as a whole, that the judge's exercise of that discretion has been arbitrary or unreasonable, resulting in prejudice to the accused, will this court reverse the ruling of the trial judge. State v. Passman, 345 So.2d 874 (La.1977); State v. Weathers, 320 So.2d 895 (La.1975).
During voir dire examination, Mrs. Brockway stated that she would give defendant the benefit of the doubt in a case based on circumstantial evidence, that she recognized defendant's presumption of innocence and that she would require the state to prove defendant's guilt beyond a reasonable doubt. At one time during her examination, she indicated that she would expect defendant to present some evidence in his own behalf; however, after further examination and questioning, she maintained that she would return a verdict of not guilty if the state did not prove defendant's guilt beyond a reasonable doubt and that she understood that defendant was presumed innocent and was not obligated to do anything to prove his innocence. Mrs. Brockway also expressed some concern that she might be influenced by what she had read about the crime, but on further interrogation, she indicated that she could set aside any preconceived ideas and allow her verdict to rest completely on the evidence in the courtroom and not on reports of the news media.
We are satisfied that Mrs. Brockway's testimony on voir dire, taken as a whole, does not support defendant's contention that the trial judge abused his discretion in denying defendant's challenge for cause of this juror. In State v. Nix, 327 So.2d 301 (La.1975) and State v. Johnson, 324 So.2d 349 (La.1975), we ruled that similar testimony on voir dire examination did not warrant the granting of a challenge for cause.
In Assignment of Error No. 39, defendant contends the trial judge improperly excused for cause prospective juror Paul Landry. La.Code Crim.P. art. 797 provides that a juror may be challenged for cause when he will not accept the law as given to him by the court. In response to questioning by the trial judge, Mr. Landry clearly indicated that he could not accept or apply the law regarding principals to a crime. Accordingly, the trial judge properly granted the state's challenge for cause of this prospective juror.
In Assignment of Error No. 42, defendant contends that the trial judge erred in overruling his objection to the court's conducting its own voir dire examination in addition to that of counsel. La.Code Crim.P. art. 786 clearly provides that the court, the state and the defendant shall have the right to examine prospective jurors. During voir dire, defendant was afforded wide latitude in obtaining information sufficient to intelligently exercise his right to challenge prospective jurors for cause or peremptorily. Accordingly, this assignment of error is without substance.
In Assignment of Error No. 55, defendant complains of a state question seeking to determine whether a prospective juror could return a verdict of guilty, knowing that it would carry a mandatory death penalty, if he were convinced of the accused's guilt beyond a reasonable doubt. Defendant stated no grounds for his objection to the question. It is well settled that this court will not review an objection where the grounds therefor are not made known to the trial judge. State v. Brown, 338 So.2d 686 (La.1976); State v. Powell, *639 325 So.2d 791 (La.1976). In any event, we find that the question complained of was entirely proper in that it elicited information necessary to a determination of whether the state had good cause to challenge the prospective juror under the provisions of La.Code Crim.P. art. 798. Accordingly, the trial judge correctly overruled defendant's objection.
Finally, in Assignment of Error No. 57, defendant objected to a line of questioning wherein the prosecutor endeavored to determine whether a prospective juror could accept the law regarding co-conspirators and explained:
The reason I'm asking, you haven't been sworn as a juror, yet; and you have a right as a citizen to disagree with the law or think it's a bad law and not be in a position where you're forced to do something that is uncomfortable to you . . .
Defendant objected on the ground that the question presupposed a prior incorrect statement of the law of co-conspirators by the prosecutor. Whether or not the prosecutor had arguably misstated the law, the judge subsequently correctly explained the law to the juror who acknowledged that he would accept the law as stated by the judge. We are satisfied that defendant suffered no prejudice under the circumstances.
These assignments of error have no merit.

ASSIGNMENTS OF ERROR NOS. 65, 66, 67, 68, 69 AND 91
These assignments of error relate to the admission of fingerprint identification evidence against the accused.
In Assignment of Error No. 65, defendant contends the trial judge erred in requiring him to be fingerprinted in the presence of the jury. The state requested this procedure so that there would be no doubt that defendant's fingerprints were those compared to latent prints lifted from a plastic stereo dustcover found just outside the scene of the crime.
It is well recognized that the privilege against self-incrimination relates only to testimonial compulsion. The privilege does not require an exclusion of the accused's body as evidence when it may be material. Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); State v. Wilson, 329 So.2d 680 (La.1976). More particularly, we have held that the privilege against self-incrimination is not violated by taking fingerprints in open court. State v. House, 320 So.2d 181 (La. 1975). Hence, the trial judge did not err in allowing the district attorney to take defendant's fingerprints in the presence of the jury.
In Assignments of Error Nos. 66 and 67, defendant complains of the ruling of the trial court admitting testimony concerning comparison of latent fingerprints subject to the state's subsequent introduction of evidence to establish a chain of custody and connection with the offense. La.Code Crim.P. art. 773 provides that when evidence requires a foundation for its admission, the foundation must be laid before the evidence is admissible. However, the record discloses that the disputed latent fingerprints were not admitted into evidence at this point during the trial. Hence, the provisions of La.Code Crim.P. art. 773 were not violated. The trial judge properly overruled defendant's objection; the court cannot control the state's order of proof. La.Code Crim.P. art. 773; State v. Weathers, 320 So.2d 895 (La.1975); State v. Mitchell, 311 So.2d 888 (La.1975); State v. Sinclair, 258 La. 84, 245 So.2d 365 (1971).
In Assignment of Error No. 68, defendant contends the trial judge erred in permitting a state fingerprint expert, Officer Alton Baxter, Jr., to walk over to the jury box to demonstrate fingerprint comparison. This procedure was followed at the suggestion of the trial judge who indicated that the jurors would not otherwise be able to see the exhibits. We find no error in the ruling of the trial judge. Moreover, defendant stated no basis for his objection. We have consistently maintained *640 that when an objection is made without stating the ground therefor, nothing is presented for appellate review. La.Code Crim.P. art. 841; State v. Brown, 338 So.2d 686 (La.1976); State v. Powell, 325 So.2d 791 (La.1976).
Defendant assigns as Error No. 69 the ruling of the trial judge permitting the prosecutor to question Officer Alton Baxter as to whether or not he had received a fingerprint report from the FBI in Washington, D.C. The district attorney indicated to the court that the state intended to call the FBI expert to the stand at a later point in the trial. The trial judge correctly ruled that no testimony by Baxter as to the content of the FBI report would be allowed but that it was proper to establish what had been sent to the FBI and what had been returned from them as part of the foundation for the FBI expert's later testimony. This assignment of error is without merit.
Defendant contends in Assignment of Error No. 91 that the trial judge erred in admitting into evidence State Exhibits Nos. 3 and 14, the latent prints and stereo dustcover from which the prints were lifted. He argues that the state did not lay an adequate foundation for the introduction of the evidence by establishing a chain of custody and that the evidence had no probative value.
It is well established that to admit demonstrative evidence at trial, the law requires that the object be identified. The identification can be visual or by establishing the custody of the object from the time it was seized to the time it is offered in evidence. State v. Henderson, 337 So.2d 204 (La.1976); State v. Dotson, 260 La. 471, 256 So.2d 594 (1971). For admission, it suffices if the custodial evidence establishes by a preponderance of the evidence that the object is the one connected with the case. State v. Mitchell, 311 So.2d 888 (La.1975); State v. Dotson, supra.
In the instant case, Peter Meisner's stereo equipment was disconnected and moved out of the living room window through which his assailants escaped. Police officers arrived at the scene less than thirty minutes afterward, found the stereo equipment behind some shrubbery outside the window and secured the area. A few hours later, the equipment was moved to a hallway and was subsequently dusted for fingerprints. Officer Donald Stoetzner testified that he personally lifted the disputed fingerprints from the plastic stereo dustcover, initialed the evidence, designated it as being lifted from the dustcover, placed it in an evidence envelope and transported it to headquarters. Officer Alton Baxter received the latent prints from Officer Stoetzner, made his own fingerprint comparison, had Officer Stephen Ledell confirm his findings and then forwarded the fingerprints to the FBI headquarters in Washington, D.C. for identification. James K. Howell, a fingerprint expert with the FBI, indicated that he received the prints in Washington and positively identified two as belonging to the defendant. The prints together with the FBI report were returned to Officer Baxter who kept them in his custody until trial.
We are satisfied that the state, through its witnesses, traced the chain of custody of the latent fingerprints designated as State Exhibit No. 3 sufficiently to establish that the fingerprints were more probably than not connected with the offense. While the stereo dustcover from which the prints were lifted was unattended for a short period before the police arrived, it is not necessary that custodial evidence eliminates all possibility that the object was altered. For admission, it suffices that the evidence establishes that the object was connected with the case by a preponderance of the evidence. State v. Kinchen, 342 So.2d 174 (La.1977); State v. Batiste, 318 So.2d 27 (La.1975); State v. Freeman, 306 So.2d 703 (La.1975); State v. Flood, 301 So.2d 637 (La.1974).
We are likewise satisfied that a proper foundation was laid for the admission into evidence of the stereo dustcover (State Exhibit No. 14). Peter Meisner visually identified it by certain markings as the one removed from his apartment during the offense.
*641 In sum, the trial judge did not err in ruling that a proper foundation was laid for the introduction of State Exhibits Nos. 3 and 14 into evidence. Having established that the evidence was connected with the case by a preponderance of the evidence, it was clearly of probative value in that it tended to prove that defendant was one of the two men who committed the offense.
These assignments of error are without merit.

ASSIGNMENT OF ERROR NO. 70
Defendant contends the trial judge erred in admitting in evidence over defense objection two photographs of the murder victim. He argues that the photographs had little or no probative value and had a prejudicial and inflammatory effect on the jury.
It is well established that the test of admissibility of allegedly gruesome photographs is whether their probative value outweighs the possible prejudice that may result from their display to the jury. State v. Williams, 343 So.2d 1026 (La.1977); State v. Cooper, 334 So.2d 211 (La.1976); State v. Smith, 327 So.2d 355 (La.1975). Photographs of the body of a deceased victim generally have been held relevant to prove the corpus delicti; to corroborate other evidence of the manner in which death occurred; to establish the location, severity and number of wounds; and to establish the identity of the victim. State v. Williams, supra; State v. Cooper, supra; State v. Beach, 320 So.2d 142 (La.1975). The circumstance that the photographs are gruesome does not of itself render them inadmissible. State v. Cooper, supra; State v. Beach, supra.
After examining the photographs in question, we do not consider that they are gruesome. Moreover, they were relevant to prove the identity of the murder victim and to corroborate the testimony concerning the manner in which she was killed. The photographs were also highly relevant to establish the identification of the victim by Felix Vergara as the girl who knocked at the door of his apartment shortly before the murder at which time he had observed defendant in close proximity to the victim. Vergara did not know the victim prior to this occasion. Hence, the probative value of the photographs clearly outweighs any possible prejudicial effects. The trial judge did not err in admitting them in evidence.
Assignment of Error No. 70 is without merit.

ASSIGNMENTS OF ERROR NOS. 72 AND 73
In Assignment of Error No. 72, defendant contends the trial judge erred in denying his motion to suppress Vergara's in-court identification of the accused and evidence of pretrial identification procedures. He additionally assigns as error the trial judge's denial of his motion for mistrial based on the same ground (Assignment of Error No. 73). Defendant argues that the pretrial identification procedures were impermissibly suggestive and tainted the witness' in-court identification.
On September 25, 1975 (about ten days after the crime), Felix Vergara viewed a photographic showup of six men including defendant. At that time, Vergara advised the district attorney that he was unable to make an identification. Five days later, he viewed a lineup, whereupon he indicated that defendant bore a close resemblance to the man he observed about an hour before the murder. At a preliminary hearing, Vergara again failed to positively identify defendant. Subsequently, he made a positive identification of defendant before the grand jury. During the identification suppression hearing, Vergara stated that he would positively identify defendant in court at trial. He explained that he had actually recognized defendant at the photographic showup, lineup and preliminary hearing but had refused to identify him for fear that his involvement in the case would result in publicity bringing him to the attention of the immigration authorities who were looking for him in connection with a violation of the terms of his visa.
*642 It is well settled that the test of whether an out-of-court identification was so impermissibly suggestive and conducive to mistaken identification that defendant was denied due process of law must be determined by the facts of each case. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); State v. Ross, 343 So.2d 722 (La.1977). A claimed violation of confrontation depends on the totality of circumstances surrounding it. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).
There is no evidence in the record that any of the pretrial identification procedures were unduly suggestive. Vergara testified that neither at the photographic showup nor the lineup was any suggestion made that defendant was one of the suspects in the case. We note, moreover, that defendant was represented by counsel at the lineup. Accordingly, we do not find that out-of-court identification procedures were impermissibly suggestive so as to taint the witness' in-court identification of the accused. In any event, even if the out-of-court identifications were tainted, if the in-court identification had a source independent of the out-of-court identifications, the in-court identification does not violate defendant's due process rights. State v. Ross, supra; State v. Judson, 329 So.2d 742 (La.1976); State v. Peevy, 321 So.2d 324 (La.1975). In the instant case, Felix Vergara testified that he observed the defendant on three occasions in the High Point Apartment complex about an hour prior to the commission of the offense. He stated that the area was well lighted and that he could positively identify defendant as the subject he saw at that time. We are satisfied that the witness' in-court identification was based independently on his observations before the offense. Therefore, whether or not the pretrial identification procedures were tainted, the in-court identification did not violate defendant's due process rights because the in-court identification had a source independent of the out-of-court identifications. State v. Ross, supra; State v. Bland, 310 So.2d 622 (La. 1975). Accordingly, the trial judge did not err in admitting the victim's in-court identification and evidence of the pretrial identification procedures and in denying defendant's motion for a mistrial based on this ground. The credibility of Vergara's testimony and the weight to be given to his in-court identification was for the jury to determine.

These assignments of error have no merit.
ASSIGNMENTS OF ERROR NOS. 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85 AND 86
These assignments of error relate to alleged errors occurring in connection with the testimony of state witness Felix Vergara.
In Assignment of Error No. 74 defendant contends the trial court erred in overruling his objection to the state's questioning of Felix Vergara concerning his response when confronted with the pretrial photographic showup. Defendant argued that the prosecutor was attempting to rehabilitate the witness before he had been impeached. The record reflects that at this point the state was merely eliciting testimony as to whether or not an identification was made as a result of the showup. The question was perfectly proper. Defendant's contention is without substance.
Assignment of Error No. 75 deals with the state's direct examination of Vergara concerning his testimony at the preliminary hearing. Defendant objected to this line of questioning based on the same reasons argued in his motion to suppress identification, which he, at this point, reurged for the court's consideration. Inasmuch as we have already determined that defendant's motion to suppress identification lacked merit,[4] this assignment of error presents nothing further for our review.
*643 In Assignment of Error No. 76, defendant contends the trial judge erred in overruling his objection to alleged hearsay testimony of Vergara and in denying his motion for a mistrial based on the trial judge's comments in ruling on the objection. In explaining why he had changed his testimony relative to defendant's identification, Vergara volunteered that:
After I give my first testimony to the in the police headquarters, they told me that my name was not going to be . . .
When defendant objected on the basis that the witness' statement constituted hearsay, the trial judge instructed the jury that the statement was offered not to prove that "what someone told him was true but that it was said."
Hearsay evidence is inadmissible except under one of the statutory or well-recognized exceptions. La.R.S. 15:434. Hearsay evidence is evidence of an unsworn, out-of-court statement made by a person other than the testifying witness which is introduced for the truth of its content. State v. Nix, 327 So.2d 301 (La. 1975); State v. Jacobs, 281 So.2d 713 (La. 1973). Evidence is non-hearsay which is offered to prove that an utterance occurred, and not to prove the truth of the facts recited. State v. Monk, 315 So.2d 727 (La. 1975); State v. Gonzales, 258 La. 103, 245 So.2d 372 (1971). Since the witness' testimony was offered only to explain that he had initially not feared publicity due to assurances by the police that his name would be withheld from the press, the trial judge did not err in ruling that in this context the evidence did not constitute inadmissible hearsay. Nor do we consider that the ruling of the trial judge violated the prohibition against judicial comment on the facts or evidence in the presence of the jury. La.Code Crim.P. art. 772. This court has consistently held that remarks made by the trial judge in the jury's presence giving reasons for his rulings on objections, for admitting or excluding evidence, or stating the purpose for which evidence is offered or admitted are not objectionable as comments or expressions of an opinion provided they are not unfair and prejudicial to the accused. State v. Young, 337 So.2d 1196 (La. 1976); State v. Lane, 302 So.2d 880 (La. 1974); State v. Fallon, 290 So.2d 273 (La. 1974). In the instant case, the trial judge's ruling was both correct and fair. Moreover, defendant makes no showing that he suffered prejudice thereby. Hence, we are satisfied that the statement of the trial judge in ruling on defendant's objection does not fall within the contemplation of La.Code Crim.P. art. 772. Therefore, defendant's motion for a mistrial was properly denied.
In Assignments of Error Nos. 78 and 79, defendant reurged his objection to the alleged hearsay testimony concerning assurances that Vergara's name would not be released to the press. He again moved for a mistrial based on the trial judge's comments in ruling. As indicated hereinabove, the testimony was not inadmissible hearsay because it was not offered to prove the truth of the matter asserted. In overruling defendant's objections, the trial judge made no remarks or comments prohibited by La. Code Crim.P. art. 772. Assignment of Error No. 85 is similarly without merit. In this assignment, defendant once again moved for a mistrial in response to the correct and fair ruling of the trial judge that certain testimony did not constitute hearsay evidence inasmuch as it was offered to prove the fact that certain statements were made and not the truth of their content.
Defendant assigns as Error No. 77 the trial judge's overruling of his objection to a state question which allegedly assumed an answer not previously given. Felix Vergara had testified that he was told by the authorities that his name would be withheld from the press and that he had not requested such treatment. The prosecutor then asked: "So you don't know why it was the officer told you that?" Before the witness answered and even before defendant could finish stating the ground for his objection, the prosecutor rephrased the question so as to put it in proper legal form. Under these circumstances, defendant suffered no prejudice *644 from the state's question. Accordingly, the trial judge did not err in overruling defendant's objection which had been cured by the rephrasing of the state's question.
Defendant next contends the trial judge erred in overruling his objection to the following prosecutorial inquiry on the ground that it was a leading question (Assignment of Error No. 80):
Now when was it that he instructed you your name wouldn't be published, before you gave him the information or after?
The witness had already testified that he was assured of no publicity before he gave information concerning the offense. Hence, the question complained of merely sought a clarification of the witness' prior testimony. It is not a leading question to ask a witness what he said previously. State v. Shepherd, 332 So.2d 228 (La.1976); State v. Sneed, 328 So.2d 126 (La.1976).
In Assignment of Error No. 81, defendant complains that the trial judge erred when he permitted the prosecutor to ask Vergara why he had requested that his name be withheld from the press. He argues that the question elicited self-serving testimony. This assignment of error has no merit. The question complained of asked the witness to relate a fact within his own knowledge, i. e., the reasons for his conduct. The weight to be accorded to the witness' response was for the jury to determine.
In Assignment of Error No. 83, defendant complains that the prosecution was allowed to rehabilitate the testimony of Felix Vergara before the witness had been impeached.
La.R.S. 15:484 provides that testimony to establish the credibility of a witness is not admissible until that credibility has been attacked. In the instant case, the witness had already testified without objection by defendant that he had not identified defendant at a photographic showup, lineup or preliminary hearing but that he could positively identify defendant at trial. The district attorney then asked the witness to "tell the jury the reason for your discrepancy in testimony today with reference to the identification. . ." In our view, a statement by the witness himself of the reason for his change in testimony does not constitute testimony to establish his credibility within the contemplation of La.R.S. 15:484. Rather, the witness was offering an explanation for his conduct which was relevant and necessary to an understanding of the whole story concerning the identification of the accused. Whether or not the explanation, by virtue of its plausibility, may have had the incidental effect of making the witness more credible in the eyes of the jurors, the question complained of was not improper and the trial judge did not err in overruling defendant's objection.
In Assignments of Error Nos. 82, 84 and 86, defendant contends the prosecutor was permitted to ask leading questions. In one instance, the question concerned when Felix Vergara had been employed (Assignment of Error No. 82). The record reflects that, after defendant's objection, the question complained of was abandoned without having been answered. Hence, defendant suffered no prejudice from this inquiry by the state. On another occasion, the prosecutor asked Vergara to tell the court why his identification of defendant was "stronger" at trial than it had been on previous occasions (Assignment of Error No. 84). The witness had already testified that he had failed to identify the defendant at certain pretrial identification procedures but that he was able to positively identify him at the present time. The question objected to merely asked the witness to relate the reason for the inconsistency in his ability to make an identification. The inquiry did not suggest an answer and therefore was not leading. In Assignment of Error No. 86, defendant complains of a question relative to Vergara's attorney wherein Vergara was asked:
I want to know after he advised you, what did he do? Did he, alone, do anything?
We are satisfied that this question did not suggest an answer but merely directed the witness to the specific area concerning which testimony was requested. In any *645 event, the record indicates that the question was rephrased after defendant's objection before being answered by the witness.
In sum, the trial judge properly overruled defendant's objections to the foregoing questions on the ground that they were leading. Moreover, even if the questions had been improper, defendant has not demonstrated wherein he was prejudiced. It is well settled, while counsel should not be permitted to mold testimony of a witness, a verdict should only be disturbed on that ground where there was a clear abuse calculated to prejudice the rights of the accused. State v. Terregano, 336 So.2d 859 (La.1976); State v. Washington, 294 So.2d 794 (La.1974).
These assignments of error are without merit.

ASSIGNMENTS OF ERROR NOS. 87, 88 AND 89
These assignments of error relate to the questioning of state witness Peter Meisner. In Assignment of Error No. 87, defendant complains that the witness was allowed to recount the facts surrounding the offense in narrative form. We have held that the trial judge has great discretion in this regard. State v. Peters, 302 So.2d 888 (La.1974). Unless abuse of discretion is shown, this court will not reverse a conviction based upon the action of the trial judge on controlling examination of witnesses. We find no such abuse here.
Defendant contends in Assignment of Error No. 88 that the witness was improperly allowed to express an opinion as to whether the same assailant kept possession of the firearm observed by Meisner at all times. The record reflects that no opinion on this subject was given. The witness testified that he did not know whether the same person had the gun throughout the offense. This assignment of error has no substance.
In Assignment of Error No. 89, defendant argues that the trial judge erred in permitting the prosecutor to ask Meisner whether he could say that defendant "was not one of the people there." Defendant contends that the question was improper because propounded in a negative form. The testimony of the witness in response to this line of questioning was that he had only glimpsed the second assailant for a split second and therefore could not say one way or the other whether the second assailant and defendant were the same person. We cannot perceive how defendant was prejudiced by the examination complained of herein. In any event, we find no abuse of discretion in the disputed ruling of the trial judge. It is well settled that control of examination of witnesses is left within the sound discretion of the trial judge and his rulings thereon will not be disturbed in the absence of an abuse of discretion. State v. Singleton, 321 So.2d 509 (La.1975); State v. Fulmer, 263 La. 971, 270 So.2d 116 (1972).
These assignments of error are without merit.

ASSIGNMENTS OF ERROR NOS. 90 AND 106
Defendant contends the trial judge erred in denying his motions for a directed verdict[5] and a new trial, which motions represented that the state had failed to present any evidence of the essential elements of the crime of first degree murder.
It is well settled that a review of the trial court's denial of a motion for a directed verdict is available only where there is no evidence of an essential element of the offense. State v. Evans, 317 So.2d 168 (La.1975). Similarly, this court's review of a motion for a new trial based on an allegation of no evidence is limited to a determination of whether there is "some evidence" to support a verdict. State v. Skelton, 340 So.2d 256 (La.1976); State v. Craig, 340 So.2d 191 (La.1976).
Felix Vergara testified that on three separate occasions on the night of the crime, within two hours of its commission, *646 he saw defendant approaching the victim in the hallway of the apartment building and later looking up the stairs. Peter Meisner testified that as he was letting the victim into his apartment, two individuals forced their way into his apartment. One of the intruders was armed with a gun. Meisner was placed face down on the floor and tied. The victim was ordered to the back bedroom. Alternately, they spent time in the rear bedroom with the victim and searched the apartment for valuables. A shot was fired and Meisner heard the men discussing whether the victim was dead. After one of the assailants moved Meisner's stereo equipment and some electrical appliances out of the apartment through the window, they then approached him. As one of the men rolled him over, the other stabbed him several times in the chest and back with a kitchen knife. They took his watch which he had managed to hide under his stomach. The intruders then exited through a window in the front room. After their departure, Meisner managed to walk to the back bedroom where he found the victim with a pillow over her head through which she had been shot between the eyes and with her slacks pulled down about her ankles. Through subsequent police investigation, defendant's fingerprints were identified among those found on Meisner's stereo equipment which had been left outside his apartment window behind some shrubbery. A vaginal smear was taken from the victim and it was found that she had had sexual relations.
After reviewing the record, we are satisfied that the state presented some evidence of each element of the crime of first degree murder. There was evidence that a murder was committed in the course of an aggravated rape and/or armed robbery as well as evidence from which the jury could properly infer specific intent to kill or inflict great bodily harm to both the victim and Peter Meisner. Finally, the fingerprint identification and Vergara's testimony constitute evidence from which the jury could conclude that defendant was one of the principals to the murder. Accordingly, the trial judge did not err in denying defendant's motions for a directed verdict and new trial based on allegations of no evidence of the essential elements of the crime charged.
Assignments of Error Nos. 90 and 106 lack merit.

ASSIGNMENTS OF ERROR NOS. 92, 93, 94 AND 95
Defendant contends the trial judge erred in overruling his objections and motion for mistrial based on the state's reference in closing argument to certain matters allegedly not in evidence.
In Assignments of Error Nos. 92 and 93, defendant complains of the following prosecutorial remarks made in closing:
. . . Said he had a little goatee. I don't know, I guess if its little, it takes about five minutes to shave it off. I think he was arrested some two weeks after this . . . .
Defendant argues that there was no evidence in the record concerning defendant's arrest or to show that he had shaved off a goatee.
La.Code Crim.P. art. 774 provides that closing argument "shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case." However, it is well settled that inferences from facts in the record are permitted to be drawn by counsel in argument. State v. Lockett, 332 So.2d 443 (La.1976). Both the state and the defense may make their own deductions of what the evidence establishes. State v. Preece, 270 So.2d 850 (La.1972). In the instant case, Felix Vergara testified that he saw the defendant shortly before the offense at which time he had a goatee. The argument of the prosecution concerning the shaving of the goatee was based on the logical inference that, if the defendant wore a goatee at the time of the offense and was later found to be without one, it simply indicated that he had shaved it off. We are satisfied that this argument was a permissible and reasonable deduction drawn from the evidence. Nor are we persuaded *647 that a mistrial was warranted due to the prosecutor's passing reference to defendant's arrest. This court has consistently held that mistrial is a drastic remedy to be sparingly granted. State v. Sylvester, 298 So.2d 807 (La.1974); State v. Clouatre, 262 La. 651, 264 So.2d 595 (1972). Before a verdict approved by a judge is set aside on ground of improper argument, this court must be thoroughly convinced that the jury was influenced by the remarks and that they contributed to the verdict. La.Code Crim.P. art. 921; State v. Lockett, supra; State v. Dennis, 250 La. 125, 194 So.2d 720 (1967). Defendant makes no showing nor can we perceive how reference to the simple fact of defendant's arrest two weeks after the offense could have prejudiced defendant's case in view of the fact that it was obvious to the jury that defendant was on trial for the capital offense of murder and since defense counsel in his own closing argument repeatedly referred to defendant's arrest and the fact that the state introduced no evidence concerning the arrest.
Defendant next complains of the prosecutor's argument in closing concerning an inference of conspiracy (Assignment of Error No. 94). After postulating that the circumstances of the offense justified a conclusion of conspiracy, the district attorney remarked:
If you can't do that, I guess we'll have to figure that these two people were unknown to each other. One of them came by way of Port Allen, the other Gonzales.. . .
At this point, defendant objected and moved for a mistrial on the ground that the statement was outside the record. In our view, it was apparent that the prosecutor was trying to demonstrate to the jury the illogic of not inferring a conspiracy under the facts of the case. The continuation of the state's argument after defendant's objection was overruled made this unmistakably clear. Accordingly, we do not consider that the state's argument was improper or that the trial judge erred in denying defendant's motion for a mistrial based on this statement.
Defendant finally argues that the trial judge erred in permitting the state to read from the text of a pretrial motion wherein defendant challenged the qualifications of one of the state's fingerprint identification experts (Assignment of Error No. 95). The reading of a portion of this motion was part of the state's rebuttal argument concerning the credibility of its fingerprint experts made in response to the closing argument of defendant which attacked the fingerprint evidence of the state. The trial judge overruled the objection noting that the motion was a part of the record of the proceeding.
Considering the context in which the portion of defendant's pretrial motion was read and in view of the closing argument of the defense, we are satisfied that the prosecutor's remarks complained of herein did not warrant the granting of a mistrial.
Assignments of Error Nos. 92, 93, 94 and 95 are without merit.

ASSIGNMENTS OF ERROR NOS. 99, 100, 101, 102, 103, 104, 105 AND 107
Defendant contends the trial judge erred in denying his motion for a new trial based on alleged violations of the rule of sequestration for jurors sworn in capital cases. He additionally complains of the trial judge's refusal to reconsider the new trial motion on the same ground and of rulings of the trial judge during the hearing held on the new trial motion.
In Assignments of Error Nos. 99 and 100, defendant contends the trial judge improperly sustained state objections to introduction of evidence concerning the number of phone calls made by jurors in another capital case and to the printed menu from a restaurant where the jurors dined on one occasion. The trial judge is vested with sound discretion to regulate unnecessary and irrelevant introduction of evidence at trial. See La.R.S. 15:275; State v. Sneed, 328 So.2d 126 (La.1976). Unless abuse of discretion is shown, this court will not reverse action of the trial court in controlling *648 the examination of witnesses. State v. Kaufman, 331 So.2d 16 (La.1976). In the instant case, the trial judge correctly ruled that evidence of phone calls made in another case from the same hotel was irrelevant. Evidence of the printed menu of a restaurant where the jurors dined was similarly irrelevant inasmuch as the jurors were served a fixed dinner not appearing on the restaurant's regular printed menu. Accordingly, we find no abuse of discretion in the rulings of the trial judge disputed herein.
In Assignments of Error Nos. 101, 102, 103 and 104, defendant contends the trial judge erred in allowing the state to subpoena the jurors in the case to testify concerning defendant's allegations that the jurors were not sequestered in compliance with law. La.R.S. 15:470 provides in pertinent part:
. . . [E]very juror . . . is a competent witness to rebut any attack upon the regularity of the conduct or of the findings of the body of which he is or was a member.
We have held under the authority of this article that, although a juror may not impeach his own verdict, he may, in a case such as this, testify to show that no misconduct prejudicial to the defendant occurred to rebut allegations that the jury was not properly sequestered. State v. Fuller, 218 La. 872, 51 So.2d 305 (1951); State v. Bullock, 136 La. 167, 66 So. 767 (1914). Hence, we find no error in the ruling of the trial judge permitting the state to present testimony of jurors to rebut the charges of misconduct made by defendant.[6]
Defendant assigns as Error No. 105 the ruling of the trial judge denying his motion for a new trial based on his contention that the jurors were not sequestered as required by law.
La.Code Crim.P. art. 791 provides in pertinent part:
A jury is sequestered by being kept together in charge of an officer of the court so as to be secluded from outside communication.
In capital cases, after each juror is sworn he shall be sequestered.
. . . . . .
The record of the hearing on the new trial motion reflects that the jurors in the instant case were frequently admonished by the court that they should not communicate with others or read or view publicity concerning the case. The testimony at the hearing indicates that the jurors did, in fact, comply with the instructions of the court.
The jurors were actually separated only when they retired for the night at a local hotel where they were accommodated two to a room on a single floor. Except for a period of about ten minutes when the bailiff walked to a drugstore next to the hotel to get medication for one of the jurors, they were under the constant supervision of the bailiff who periodically checked the hallway running in front of the jurors' rooms. We have held that La.Code Crim.P. art. 791 is not violated by allowing jurors to sleep in separate rooms. This article does not require that the jury be kept continually in one single group, but rather that they be sequestered so as to be secluded from outside communication. State v. Alexander, 339 So.2d 818 (La.1976); State v. Cuchinelli, 261 La. 789, 261 So.2d 217 (1972).
Defendant attempted to show that at least one of the jurors had separated from the group at dinner to get a drink from the hotel lounge. The juror, however, testified that he had merely picked up his drink on the way back to his room with the whole group and that the beverage had been ordered from the table during the meal. In any event, the juror clearly maintained that he had no communications with anyone concerning the case. Defendant *649 also alleged that the jurors were separated when they used the restroom facilities at the restaurants where they dined. The jurors testifying for the state indicated, however, that they either did not use the restrooms or that the facilities were vacant when they were used. Hence, the jurors were not exposed to outside influence. While we have held that sequestration must be strictly enforced especially in capital cases, where circumstances are such as to reasonably overcome the presumption of prejudice and where it affirmatively appears that no prejudice to the accused can have resulted, the mere separation of a juror briefly may be held to be insufficient ground to set aside a verdict. State v. Smith, 322 So.2d 197 (La.1975). We are satisfied that affirmative proof of an absence of prejudice was adequately established in these instances.
Defendant finally suggests that sequestration was impermissibly relaxed in that the jurors were allowed to make a number of telephone calls to their families. The record reflects that the telephones were blocked out in the jurors' rooms and that all disputed calls were made from the bailiff's room and in his presence. In view of the fact that the jurors in this case were sequestered for several days, we do not consider that La.Code Crim.P. art. 791 was violated by permitting jurors to call their families to give instructions and to ask that they be sent additional clothing or supplies.
In sum, we are satisfied that the jurors in this case were sequestered in substantial compliance with La.Code Crim.P. art. 791.
In Assignment of Error No. 107, defendant contends the trial judge erred in denying his motion for reconsideration of the new trial motion based on improper sequestration of the jurors. Defendant requested in this motion disclosure of the name of a female deputy present on the first night of sequestration and that he be given access to the tape recordings of trial to assure that the minutes regarding the court's instructions on sequestration conformed with the actual proceedings.
At the hearing on defendant's initial new trial motion, the trial judge indicated that he was fully aware that a female matron was being provided by the sheriff's department on the first evening of sequestration. The bailiff testified that he was present with the jurors at all times the matron was present. In view of the fact that the bailiff testified fully at the hearing and the matron was clearly an officer of the court, we do not find that defendant was prejudiced by not knowing the identity of the female matron. In fact, when her identity became an issue at the hearing on the initial motion, defendant did not request that her name be disclosed or that she be subpoenaed to testify at the hearing.
As to defendant's request for the tapes of the proceeding, the record of the initial new trial hearing discloses that the trial judge assured defendant that he could base his appeal on a transcription of the entire record including admonishments concerning sequestration and that the minutes would be conformed to the actual record of the proceedings. Under these circumstances, we find no error in the ruling of the trial judge denying defendant's motion for reconsideration of the new trial motion and disclosure.
Assignments of Error Nos. 99, 100, 101, 102, 103, 104, 105 and 107 have no merit.

ASSIGNMENTS OF ERROR NOS. 109, 110, 8 and 108
These assignments of error relate primarily to defendant's attacks on the grand and petit jury venires.
In Assignment of Error No. 109, defendant contends the trial judge erred in refusing to quash the grand jury venire from which the grand jury which indicted him was selected. In support of his motion, defendant claims that the procedure for selecting the grand jury venire excluded women and blacks and that the grand jury venire did not reflect a reasonable cross-section of the community in that the court routinely excused from service persons from the lower economic groups.
*650 In Assignment of Error No. 110, defendant claims the trial judge erred in refusing to quash the petit jury venire, repeating his assertion that women and blacks had been excluded from the general venire. He additionally claimed that many blacks selected for the petit jury venire were excused without proper cause and that persons of lower economic status generally were excused from the jury venire.
Regarding defendant's claims that women were improperly excluded from the grand jury venire, the record reflects that the grand jury in the instant case returned an indictment against defendant on November 14,1974 at which time the law required women to volunteer for jury duty. La. Const. art. 7, Â§ 41 (1921); La.Code Crim.P. art. 402 (1966). In Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), decided on January 21, 1975, the United States Supreme Court held that the Louisiana provisions for the exemption of women from juries were unconstitutional. However, in Daniel v. Louisiana, 420 U.S. 31, 95 S.Ct. 704, 42 L.Ed.2d 790 (1975), the Court held that the Taylor ruling, as a matter of federal law, was not to be applied retroactively. Although both Taylor and Daniel involved the selection of petit juries, we have held that the rationale applies to the selection of a grand jury. State v. Ballard, 337 So.2d 468 (La.1976); State v. Gaines, 315 So.2d 298 (La.1975). Since the grand jury in the present case was empanelled and the indictment returned prior to the decision in Taylor, that decision is inapplicable here. State v. Ballard, supra; State v. Cooper, 334 So.2d 211 (La.1976). We have consistently held that Taylor is not to be applied retroactively as a matter of state law. State v. Ballard, supra; State v. Gaines, supra.
The petit jury venire in the instant case was selected on December 17,1974 and the jury panel was selected on January 13 and 14, 1975. A list of the prospective jurors for service on January 13, 1975 reveals that about 50% of the prospective jurors were female. Moreover, the record reflects that six of the twelve jurors sworn in this case were women. Under these circumstances, it is obvious that the general venire included women. Hence, there is no merit to defendant's contention that there was a systematic exclusion of women from the petit jury venire.
Defendant additionally contends that members of the grand and petit jury venires were improperly excused by the trial judge without legal cause. There is no evidence whatsoever in the record that anyone was excused from the grand jury venire in the instant case prior to the empanelling of the grand jury. Only one individual selected to serve as a grand juror was excused when he indicated that he had conscientious scruples against grand jury service. The trial judge indicated, however, that he had excused a number of persons from the petit jury venire for reasons of illness or family problems which would make service on a sequestered jury an undue hardship.
At the time of defendant's trial, La.Code Crim.P. art. 783 provided that the court may excuse a member of the petit jury venire at any time prior to the time he is sworn as a juror. We have held that defendant need not be present when the trial judge excuses prospective jurors before his case is called for trial. State v. Williams, 258 La. 801, 248 So.2d 295 (1971). The trial judge's discretion to release prospective jurors in advance of voir dire examination is not to be disturbed unless there is a showing of fraud or collusion resulting in prejudice to the accused. State v. Gomez, 319 So.2d 424 (La.1975). In the instant case, beyond defendant's allegation that the trial court abused its discretion in excusing prospective veniremen prior to trial, the record fails to show that defendant was prejudiced or deprived of his right to a fair cross-section of the parish. State v. Liddell, 318 So.2d 1 (La.1975). Hence, we find no merit to this contention.
Defendant argues that the procedure in East Baton Rouge Parish for selection of grand and petit jury venires is improper in that it systematically excludes from service blacks and women.
*651 The record reflects that the general venire from which the grand and petit jury venires were drawn was composed of a list of registered voters and persons with driver's licenses residing in the parish. We cannot say that the use of such lists without any showing of any discrimination against a class of people establishes that the jury pool did not represent a cross-section of the community. State v. Daigle, 344 So.2d 1380 (La.1977). These lists of persons are fed into a computer which is programmed to print out a random selection of persons as needed for grand and petit jury venires. The testimony adduced affirmatively indicates that the programming of the computer is in no way conducive to the systematic exclusion of any group of persons.
In any event, La.Code Crim.P. art. 419 provides that a general venire, grand jury venire, or petit jury venire shall not be set aside for any reason unless fraud has been practiced or some great wrong committed that would work irreparable injury to the defendant. The burden of proof rests on defendant to establish purposeful discrimination in the selection of grand and petit jury venires. State v. Cripps, 259 La. 403, 250 So.2d 382 (1971); State v. Grey, 257 La. 1070, 245 So.2d 178 (1971). We are satisfied that defendant has not borne his burden of proof in the instant case.
In Assignments of Error Nos. 8 and 108, defendant contends the trial judge erred in denying his motion in arrest of judgment based on exclusion of blacks and women from the grand jury and alleged duplicity and multiplicity in the indictment returned against him.
Insofar as the contention concerning exclusion of women and blacks from the grand jury has already been determined to be without merit, nothing further is presented for our review.[7]
Defendant's claim regarding multiplicity and duplicity in the indictment is also without substance. We rejected defendant's contention of multiplicity in our treatment of Assignments of Error Nos. 13,14, 15 and 31A. In State v. Nix, 327 So.2d 301 (La. 1975), we similarly held that an indictment such as the one returned in the instant case is not duplicitous. Accordingly, the trial judge did not err in denying defendant's motion for an arrest of judgment based on these grounds.
These assignments of error have no merit.

ASSIGNMENT OF CUMULATIVE ERROR
Defendant finally contends that, although none of his assigned errors may individually warrant reversal of his conviction and sentence, taken together they indicate that defendant did not receive a fair trial. We do not agree. We have carefully examined each of the errors alleged by defendant and found them to be without merit. We are unwilling to say that the cumulative effect of assignments of error lacking in merit warrants reversal of a conviction. Hence, defendant's claim of cumulative error is without substance.
After defendant was sentenced in this matter, the United States Supreme Court in Roberts v. Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976) held unconstitutional Louisiana's mandatory death sentence for first degree murder. In accordance with that decision, this court has vacated death sentences in first degree murder cases but, when no other reversible error has been found, we have remanded the cases to the trial court for resentencing of defendants to the most severe valid penalty established by the legislature for criminal homicide at the time of the offense. State v. Williams, 343 So.2d 1026 (La.1977); State v. Jenkins, 340 So.2d 157 (La.1976); State v. Clark, 340 So.2d 208 (La.1976). In the instant case, the crime was committed on September 14, 1974. The most severe valid penalty for criminal homicide applicable on that date was the penalty for second degree murder, life imprisonment at hard labor without eligibility for parole, probation or suspension of sentence for twenty *652 years. Accordingly, even though we affirm the conviction, we vacate and set aside the imposition of the death penalty and remand the case to the trial court for resentencing.

DECREE
For the reasons assigned, defendant's conviction is affirmed, but the death sentence imposed on him is annulled and set aside, and the case is remanded to the district court with instructions to the trial judge to sentence defendant to imprisonment at hard labor for life without eligibility for parole, probation or suspension of sentence for a period of twenty years.
DIXON, J., concurs, disagreeing with the treatment of "conspiracy" questions.
NOTES
[1] A district attorney may make substantive amendments to a grand jury indictment. State v. Bluain, 315 So.2d 749 (La.1975); State v. Fitzgerald, 248 La. 487, 179 So.2d 906 (1965).
[2] The sanity hearing in this case was conducted on December 17, 1974, prior to the amendment of La.Code Crim.P. art. 644.
[3] See discussion of this issue at Assignments of Error Nos. 30 and 59.
[4] See discussion of Assignments of Error Nos. 72 and 73.
[5] Defendant was tried prior to the effective date of the amendment of La.Code Crim.P. art. 778 which no longer authorizes a trial judge to direct a verdict of not guilty in a jury trial.
[6] Defendant additionally argued to the trial judge that insofar as La.R.S. 15:470 may authorize the testimony of jurors under these circumstances, the provision is unconstitutionally vague, overbroad and constitutes a denial of due process of law. We find no merit in this contention which was made without explanation or citation of authority and which has been abandoned in brief and argument to this court.
[7] See treatment of this issue at Assignments of Error Nos. 109 and 110.